# Commonwealth *v.* Crowley, Appellant.

*Evidence—Discharge of soldier—Physical characteristics.*

A certificate of a discharge of a soldier from the United States Army containing a description of his physical characteristics is inadmissible in evidence to show the height of the soldier. The introduction of such a document in a murder trial is injurious to the prisoner where the effect of it is to rebut evidence offered by the prisoner that the deceased, his adversary, was of greater height and strength than himself.

*Criminal law—Murder—Arrest—Self-defense—Policeman.*

It is not the duty of an officer when not exceeding his authority to fly when assaulted. He may defend himself and use such force as may be necessary for that purpose. He is not justified in taking life except when the assault is so violent as apparently to put him in danger of death, or great bodily harm ; but the law does not require him to flee to the wall.

On the trial of a borough policeman for murder, it appeared that the defendant finding the deceased and a companion after midnight in the streets sitting on doorsteps other than their own, told them to go home. The deceased became violently abusive, and defendant then threatened to arrest him. An arrest under the circumstances would have apparently been unauthorized. The prisoner testified that he did not attempt to arrest the deceased, but turned away to secure assistance and thereupon the deceased knocked him down three times, and stood over him saying he was going to kill him if it was the last act of his life, and that then the defendant fired the shot. *Held*, that it was error for the court to charge the jury in such a way as to leave the impression on their minds that the defendant had arrested, or was attempting to arrest the deceased, and that the latter's attitude was one of resistance to an unlawful arrest.

Argued April 11, 1904. Appeal, No. 29, Feb. T., 1904, by defendant, from judgment of O. & T. Clinton Co., Sept. T., 1903, No. 1, on verdict of guilty of voluntary manslaughter in case of Commonwealth v. Michael Crowley. Before RICE, P. J., BEAVER, SMITH, PORTER, MORRISON and HENDERSON, JJ. Reversed.

Indictment for murder.

At the trial it appeared that shortly after midnight of June 25, 1903, the defendant shot and killed William J. Ryan under circumstances stated in the opinion of the Superior Court.

The commonwealth made the following offer :

It has been testified here, on the part of the defense, that William J. Ryan was about five feet nine inches tall. We offer

in evidence his discharge from the United States Army in 1899, showing his exact height, by measure, to be five feet five and three fourths inches.

Counsel for defendant objects, because it is not anthentic; it is not in form to be competent evidence; there is nothing to show its accuracy.

The Court: Objection overruled, evidence admitted and bill sealed for the defendant. [1]

The court charged in part as follows:

The defendant contends that the killing of Ryan was excusable or justifiable, and it therefore becomes my duty to state the law of self-defense as applicable to the facts of the case.

To excuse homicide by the plea of self-defense, it must appear that the killing was done under a reasonable apprehension of loss of life, or great bodily harm, and the danger must appear so imminent at the moment of the assault as to present no alternative but taking the life of the assailant. The law of defense is the law of necessity, and that necessity must be real, or bear all the semblance of reality, and appear to admit of no other alternative, before taking life will be justifiable or excusable. And the burden lies on the prisoner of proving that there was an actual necessity for taking life, or a seeming one, so reasonably apparent and convincing to him as to lead him to believe he could only defend himself by taking the life of the deceased. If the defendant could have fled from his assailant, it was his duty to do so. In Commonwealth v. Drum, 58 Pa. 9, Justice AGNEW, when speaking of the law of self-defense, said: " Where it comes to a question whether one man shall flee or another shall live, the law decides that the former shall rather flee than the latter shall die." As was said by the Supreme Court in Commonwealth v. Breyessee, 160 Pa. 451: " Life may be lawfully taken in self-defense, but it must appear that he who takes it was in imminent danger of death, or great bodily harm, and that no other way of escape from the danger was open to him. It is the duty of one who is assailed to flee, if flight is possible; and it is only when he is persuaded that he must suffer death or grievous bodily harm at the hands of his assailant or take the life of his assailant that he may save his own, that he can justify his act as done in self-defense." And

it will be for the jury to determine whether there was a necessity for the defendant to fire the shot in order to protect himself from death or great bodily harm, or whether the circumstances justified the prisoner in so believing, and in determining this question you will consider the parties themselves, the prisoner and the deceased, their relative size, physical ability, and all the circumstances surrounding the case, as detailed by the witnesses for the commonwealth and the prisoner himself, and say whether or not you believe it was necessary for him to take the life of Ryan in order to protect his own, or prevent great bodily harm to himself. If he could have got away without that, he was bound to go, and if he fired the shot without such necessity, he would not be justified, under the law, by reason of the excuse of self-defense.

This is the general rule, but it is claimed in the present case that it is qualified by reason of the fact that the defendant was a police officer, and that he was not bound to retreat or attempt to escape, but, on the contrary, it was his right and duty to stand and defend himself. This would be the law if the defendant was legally in the discharge of his official duty. Although he was a police officer, yet if he acted illegally in attempting to arrest Ryan, his act would not be excusable on the ground of self-defense unless the attack made upon him by Ryan was such as made it necessary for him to take the life of Ryan in order to save his own life, or prevent the infliction of great bodily harm.

Was the defendant legally in the discharge of his official duty? Had he a right to arrest Ryan? The defendant was a night watchman or police officer of the borough of Renovo. As such, he had authority to preserve the peace, protect the property of the citizens of the borough of Renovo, quell public disturbances or breaches of the peace committed in his presence.

What are the circumstances, as detailed by the witnesses for the commonwealth and the prisoner himself, which led to the arrest, or attempted arrest of Ryan? Frank McCarthy and William Ryan were seated on the front doorstep of the dwelling house of Mr. Chamberlain on the night of June 25, 1903, about 12 o'clock. The defendant was patrolling the streets of the borough of Renovo, and came to the place where these two young men were seated. They were making no noise or public

disturbance.   Crowley said to them : " Boys, it is after 12 o'clock
and time you boys were in bed."   Ryan jumped up, and using
opprobrious epithets, said : " What is it your business if we stay
here all night."   Crowley then said : "It is a part of my business
as an officer to see that you are not around at this hour of the
night sitting on other people's steps."   In this Crowley mistook
his official authority.   He had no right as a policeman to order
McCarthy and Ryan to go home, as they were not creating any
public disturbance, nor committing a breach of the peace.   They
had the right to refuse to go home.   Night policemen are not
clothed with arbitrary power to tell citizens, who are peaceable
and orderly upon the streets, when they shall go to their homes
or when they shall come out.   What was said by Ryan when
Crowley attempted to arrest him would not justify Crowley in
arresting Ryan, and he had a right to resist.   What Ryan said
to Crowley was not a violation of the borough ordinance such
as would justify an arrest.   Edwin Bower, a disinterested wit-
ness of the commonwealth, states that he saw this affray ; that
Ryan pushed Crowley down, using both hands ; that Crowley
fell upon his back, and when Crowley attempted to rise to his
feet, Ryan pushed him down the second time, Crowley falling
upon his back.   Crowley, the defendant, is a competent witness,
but he is interested, as his liberty is in danger ; consequently it
is the duty of the jury to carefully scrutinize his testimony and
pass upon its credibility.   Crowley says that Ryan struck him
behind the right ear with one hand and pushed him down with
the other ; that when he attempted to rise to his feet, Ryan
struck him above the right eye and pushed him down the second
time ; that when he attempted to rise the second time, Ryan
struck him in the neck, that he fell, striking his head on the
pavement.   If the jury should be satisfied that these circum-
stances, as detailed by the prisoner in regard to the shooting of
Ryan, are true, it then becomes their duty to determine whether
the shooting was excusable or justifiable.   The case must be
determined by the jury under the general rule regulating the
law of self-defense, which the court has declared to you, and
which is correctly stated in the first point presented by the
counsel for the defendant, which is as follows : "If the jury be-
lieve, from the evidence in the cause, that Michael Crowley, at
the time he shot William J. Ryan, had, in good faith, reasonable

belief, from the facts and circumstances as they appeared to him at the time, that he was in imminent peril of his life, or of great bodily harm, his killing of Ryan was excusable, although it afterwards appeared that he (Crowley) was mistaken as to the imminence of the danger. The law will not hold a man to absolute correctness of judgment under such trying circumstances, and it was not necessary that Crowley should have been in actual, imminent peril of his life, or of great bodily harm, to render his killing of Ryan excusable. *Answer :* This point is affirmed.

Verdict of guilty of manslaughter in which the prisoner was sentenced to three years' imprisonment.

*Errors assigned* were (1) rulings on evidence, quoting the bill of exceptions; (2) portion of charge as above, quoting it.

*T. C. Hipple,* for appellant.—The certificate of discharge was improperly admitted : Clark v. Trinity Church, 5 W. & S. 266; Sitler v. Gehr, 105 Pa. 577; Hegler v. Faulkner, 153 U. S. 109 (14 Sup. Ct. Repr. 779); Chapman Twp. v. Herrold, 58 Pa. 106.

The charge of the court complained of in the second assignment must have had, as is believed and respectfully stated, such strong, if not controlling, effect upon the jury as to virtually cause them to conclude the defendant, Crowley, had acted illegally towards Ryan; was a wrongdoer and guilty of a crime of grave character, which could readily be inferred to be voluntary manslaughter.

Crowley did not mistake or exceed his lawful authority as the court charged he did : Miles v. Weston, 60 Ill. 361; Com. v. Cheney, 141 Mass. 102 (6 N. E. Repr. 724); Roberts v. State, 14 Mo. 138; Com. v. Weathers, 7 Kulp, 1; Brooks v. Com., 61 Pa. 352; Burns v. Erben, 40 N. Y. 463.

A person cannot use excessive force to prevent an arrest: Com. v. Wright, 158 Mass. 149 (33 N. E. Repr. 82); Davis v. Burgess, 54 Mich. 514 (20 N. W. Repr. 540); Miller v. State, 31 Texas Criminal Repr. 609 (21 S. W. Repr. 925).

An officer such as Crowley was has the clear legal right, when in performance of his duty, to stand and defend himself against excessive assault by one whom he attempts to arrest

for what he considers proper cause, committed in his presence : Com. v. Rhoads, 23 Pa. Superior Ct. 512 ; Com. v. Weathers, 7 Kulp, 1 ; Com. v. Max, 8 Phila. 422.

An arrest may be made for the breach of an ordinance made for the preservation of good order and public convenience : White v. Kent, 11 Ohio St. 550 ; State v. Cantieny, 34 Minn. 1 (24 N. W. Repr. 458) ; Bryan v. Bates, 15 Ill. 87 ; Main v. McCarty, 15 Ill. 441.

*R. B. McCormick,* district attorney, and *W. C. Kress,* for appellee.—The discharge was competent prima facie evidence of what it contained : Morris v. Patchin, 24 N. Y. 394 ; People v. Jones, 24 Mich. 215 ; Adams County v. Mertz, 27 Ind. 103 ; Levy v. Burley, 15 Fed. Cases, 8300 ; Washburn v. Phillips, 43 Mass. 296 ; Zell v. Com., 94 Pa. 258 ; Huntingdon, etc., R. R. & Coal Co. v. Decker, 82 Pa. 119 ; Wills v. Hardcastle, 19 Pa. Superior Ct. 525 ; Com. v. Craig, 19 Pa. Superior Ct. 81 ; Com. v. Fry, 198 Pa. 379.

If an officer undertakes to make an illegal arrest, it is the same as if a private citizen did it, for an officer is protected by the law only when exercising the law. Amongst the most sacred rights possessed by the people of this country is that of personal immunity, and when officers violate it, the citizen can use all the force necessary to resist : Com. v. Stirk, 5 Lanc. Law Review, 415 ; Com. v. Fisher, 1 Legal Opinion, 50 ; Com. v. Collins, 15 Phila. 383 ; Com. v. Krubeck, 8 Pa. Dist. Rep. 521 ; Com. v. Megary, 8 Phila. 616 ; Com. v. Greer, 20 Pa. C. C. R. 535 ; Kerr on Homicide, 215, 216.

OPINION BY HENDERSON, J., July 28, 1904 :

On the trial of the case the defendant introduced evidence of the height and weight of his adversary for the purpose of showing disparity of physical strength. This was admittedly competent and was material under the facts disclosed. This evidence showed, among other things, that Ryan was about five feet nine inches high. In reply to the evidence for the defendant on this point, the commonwealth introduced a paper purporting to be a certificate of discharge of Ryan from the United States Army which contained a descriptive list stating the age, height, complexion, color of hair and occupation of

VOL. XXVI—9

the soldier.   His height was given as five feet five and three fourths inches.   We do not deem it necessary to determine the question whether the discharge offered in evidence is self-authenticating and prima facie admissible as evidence for any purpose.   We do not consider it competent for the purpose for which it was admitted.   The paper is not a record nor does it appear to be a copy of a record.   It is a document delivered to a discharged soldier, presumably to place in his possession evidence of his service and lawful discharge.   It is for his use and protection only.   The personal description therein contained is given for identification and is purely incidental to the object of the paper which relates to service and discharge. The certificate as to height is no more important than that of complexion or color of hair or occupation.   It is not shown that any statute, or regulation of the war department, requires this recital.   The conclusiveness of such a document is restricted to the subject for which it was given.

It was held in Mutual Benefit Life Insurance Company v. Tisdale, 91 U. S. 238, citing Campbell v. Gordon, 10 U. S. 176, and Stark v. Chesapeake Insurance Co., 11 U. S. 420, that a certificate of naturalization is against all the world, a judgment of citizenship upon which may follow the right to vote and hold property and as such is conclusive, but that it is not admissible in another proceeding as evidence of the age or good character of the applicant.   In Erickson v. Smith, 2 Abb. Ct. of App. (N. Y.) 64, the court held that a steamboat inspector's certificate made under the act of congress of 1852 is evidence of the fact of the inspection by the officer appointed for that purpose, but that when challenged by a stranger it is not evidence of the facts recited therein notwithstanding that the officers are required by law to make a return of such facts.

In Hegler v. Faulkner, 153 U. S. 109 (14 Sup. Ct. Rep. 779), a question arose as to the age of an Indian who had been enrolled as one of a number entitled to participate in the division of lands under a treaty.   One of the instructions of the Indian Department required the preparation of a roll containing the names of all applicants arranged by tribes and families and single persons, showing name, age, sex, relationship to the tribe and place of residence.   A census had also been taken of Indians entitled to lands containing the name, age, etc., of certain Indians of

whom the person in question was one.   The records of the department were offered in evidence for the purpose of showing the age of the particular Indian in an issue involving the validity of a conveyance by him of land allotted.   They were held to be in admissible for such purpose.   The ascertainment of the ages of the parties entitled to an allotment was held to be merely for the purpose of enabling the agent to identify the individuals and when the allotment was completed the purposes of the inquiry were fulfilled and the records could not be resorted to in disputes between other parties to prove the age of Indians.

To the same effect is Clark v. Trinity Church, 5 W. & S. 266, and Sitler v. Gehr, 105 Pa. 577.   As to strangers the incidental recitals in the discharge are purely hearsay and inadmissible as evidence.

It is contended, however, that the introduction of this evidence did not injure the defendant.   That it was considered relevant by the commonwealth at the trial is evident.   Testimony introduced by the defendant tended to show that Ryan was a man of much greater strength than the accused.   This, if believed, might have an influence with the jury in at least creating a reasonable doubt as to the guilt of the defendant.   It was important, therefore, for the commonwealth to produce rebutting evidence and it is manifest that a document purporting to be issued under the authority of the War Department giving an exact measurement of the height of Ryan would have great weight with the jury upon that point.   It is not a logical answer to the objection to say that the defendant had introduced testimony upon this point and that he had the full benefit of it.   He was entitled to all the weight of his own competent evidence without any diminution or impairment by inadmissible evidence in rebuttal.   It is impossible to determine to what extent this evidence may have influenced the jury.   And, as was said in Zell v. Commonwealth, 94 Pa. 258, "because of that uncertainty it should not have been admitted."

The first assignment of error is therefore sustained.

The defendant was a policeman of the borough of Renovo and engaged in the discharge of his duty as such on one of the public streets of the borough.   His defense was that he fired the fatal shot in self-defense while subjected to a violent assault

by Ryan.   The learned judge instructed the jury that the defendant mistook his official authority when saying to Ryan and his companion that it was part of his business as an officer to see that they were not around at that hour of the night (12 : 15 A. M.) sitting on other people's steps ; that they had a right to refuse to go home, that what was said by Ryan when Crowley attempted to arrest him would not justify the latter in arresting Ryan and he had a right to resist ; what Ryan said to Crowley was not a violation of the borough ordinance such as would justify an arrest; that the defendant was not justifiable in attempting to arrest Ryan under the circumstances and that therefore he had no right, as an officer, to stand and defend himself ; that the rights of the defendant must be determined by the " general rule of self-defense," and that if he could have fled from his assailant it was his duty to do so.

It is contended on behalf of the defendant that irrespective of the propriety of his action in asking or directing the young men to go home there was evidence tending to show repeated assaults upon him by Ryan accompanied by violent and threatening language, and that the jury should have been permitted to determine whether there was an attempt to arrest Ryan and if so, whether the assault by the latter exceeded the reasonable resistance necessary to prevent such attempted arrest.   The only witnesses called by the commonwealth who were present when the shot was fired were Frank McCarthy, the companion of Ryan and Edwin Bower, the latter about eighty-five feet away.   Upon the subject of arrest, McCarthy testified :

" He (Crowley) says, ' Well, you had better go home to bed.'   He said something about arresting us and locking us up.   Could not just say it was that.   It was something like that."

Ryan then got up, after which he and the defendant had some words.   The witness could not hear what Crowley said because his voice was weak, but he heard Ryan calling him an offensive name.   The attention of the witness was called to Mr. Bower, who had just passed, after which he states :

" I looked over then and he (Crowley) had his back to me and his arms behind him, and it looked to me as here was Crowley standing and Bill (Ryan) had his back against this building here, and it looks to me as if he had his arms down

alongside.   I guess his arms were not on Crowley anywheres as near as I could see.   Crowley was standing right in front of him about three feet, and it seems Will kind of run out, I don't know, started to walk toward him and that he could not run out and Crowley had his hands behind his back. . . . Had his revolver drawn in his right hand and his hands folded behind his back.   Well, now it seemed he stood there awhile with his hands behind his back.   I could not say ; I could see both arms drop, didn't raise his left arm ; could not see, but his right arm went up and the shot was fired.   Then I ran over."

Bower testified that:

" The night policeman was apparently attempting to arrest one of the young men."

At another stage of the examination he said : " I was under the impression, as I say, that he was attempting to make an arrest ; " and again : " The night policeman was evidently attempting to make an arrest and had hold of one of the young men whom I did not know at the time, and who afterwards developed to be Ryan."

The witness then described the manner in which Ryan twice pushed the defendant down on the sidewalk.   After Crowley got up the witness saw him proceed directly westward from the point where he was standing and Ryan also went in the same direction.   They passed into the shadow of a building which obscured them from the witness.   There was comparative quiet for a brief space, then the altercation began again.   The only voice which the witness could distinguish was Ryan's, who was using profane and threatening language to the policeman.   The language was of such a character as to threaten him with bodily harm.   After this the witness heard the report of the shot.

The defendant testified that he said to McCarthy and Ryan, " Boys, it is after twelve o'clock and time for you to be in bed ; " that Ryan jump up using offensive language, whereupon the defendant said, " If you don't quit this boisterous talk I will have to arrest you," to which Ryan replied in vulgar language that he (the defendant) could not arrest anybody ; " that time he got hold of me and I started away towards the depot to get assistance to arrest him, and when I

turned to walk away from him he struck me right here in the neck and pushed me down on the pavement on my hands." The witness then described the manner in which he was twice knocked down afterwards, and that after he was knocked down the third time Ryan stood over him saying he was going to kill him if it was the last act of his life, and that then the defendant fired the shot. On cross-examination he stated that he was trying to arrest Ryan after he called him the names referred to.

If we assume that the defendant exceeded his authority in advising or directing McCarthy and Ryan to go home under the circumstances, it does not so clearly appear from the evidence that Ryan was engaged in resisting an unlawful arrest as to justify the conclusion that the officer was bound to fly if he were able so to do. If the defendant's evidence is credited, just before the assault upon him he turned from Ryan and started to procure assistance and there was apparently no necessity for the violence on the part of Ryan alleged by the defendant. The parties had passed out of the view of Bower so that he did not know what their attitude was immediately before the shot was fired. The testimony of McCarthy gives little information on the subject of the attempted arrest. The defendant claimed that he was thrice knocked down on the pavement and that after the third blow Ryan stood over him in an angry manner and threatened to kill him. It became necessary, therefore, for the jury to consider:

First, whether the defendant was attempting to arrest Ryan at or immediately before the time of the shooting. Second, whether Ryan was resisting an attempted arrest at the time or immediately before he was shot; third, whether, if resisting an unlawful arrest, he used a much greater degree of force than was necessary. If the defendant was not attempting to arrest Ryan, but was going away from him to procure assistance, Ryan was not in the position of one whose attack could be justified. If an attempt at arrest had been made by the defendant and he afterward started away from Ryan and indicated an intention to leave him, the situation would not authorize an assault by the latter. If the violence and extent of resistance were out of all proportion to the necessity of the case and the circumstances indicated that Ryan was seeking or provoking a quarrel, the right of justification would be lost: Commonwealth v.

Wright, 158 Mass. 149 (33 N. E. Repr. 82); Commonwealth v. Crotty, 92 Mass. 403; Bad Elk v. United States, 177 U. S. 529 (20 Sup. Ct. Repr. 729); 1 Wharton Criminal Law (9th ed.), sec. 649.

It is not the duty of an officer, when not exceeding his authority, to fly when assaulted. He may defend himself and use such force as may be necessary for that purpose. He is not justified in taking life except when the assault is so violent as to apparently put him in danger of death or great bodily harm. But the law does not require him to flee to the wall.

We are of the opinion that the jury should have been permitted to pass upon the questions above indicated. The charge of the court must have left the impression on the minds of the jury that the defendant had arrested or was attempting to arrest Ryan; that the latter's attitude was one of resistance to an unlawful arrest. The evidence bearing upon the actions of the parties at the time should have been submitted to the jury for their consideration with proper instructions as to the rights of the parties.

The second assignment of error is therefore sustained.

The third and fourth assignments do not require consideration.

The judgment is reversed and a venire facias de novo ordered.