507 A.2d 813

**COMMONWEALTH of Pennsylvania**

v.

**Thomas BODEN, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 24, 1986.

Decided April 10, 1986.

John M. Gallagher, Media, for appellant.

John A. Reilly, Dist. Atty., Joseph J. Mittleman, Media, for appellee.

NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## ORDER

PER CURIAM:

Order affirmed.

LARSEN and McDERMOTT, JJ., file a dissenting opinion.

LARSEN, Justice, dissenting.

The first line of defense in society's battle against the anarchy of crime is the police officer. In affirming the Superior Court's decision in this case, the majority strips the police officer—and society—of a principal element for his protection in that ceaseless struggle. That protection is

the right, authority and obligation of the police officer to use reasonable force, including deadly force if necessary, in executing his duties and in defending himself and others so long as the use of force is exercised within the parameters established by law. To be effective, that protection must extend to a police officer charged with and called to account for the excessive use of force. Accordingly, a jury chosen to determine whether the officer did, in fact, use force which was excessive under the circumstances must be fully appraised of the principles of law which govern a police officer's use of force in defending the peace and in enforcing the penal laws of this Commonwealth. In affirming Corporal Thomas Boden's conviction for involuntary manslaughter returned by a jury that was woefully uninformed as to those principles, the majority has seriously weakened our first line of defense.

The circumstances in which Corporal Boden, the appellant, drew and fired his service revolver, killing Marne Toogood, border on the bizarre. Although some of the eyewitness testimony was inconsistent, there was evidence at trial from which the jury could have found the following sequence of events.[1]

1. In its brief, the Commonwealth erroneously asserts the following: "Naturally, it is axiomatic that the record on appeal must be viewed in a light most favorable to the Commonwealth as the verdict winner. *Commonwealth v. Davis,* 491 Pa. 363, 421 A.2d 179 (1980). Unfortunately, the defendant's brief before this Court effectively ignores the black-letter law on this issue, and presents a Statement of the Case which portrays the facts in a light most favorable to the verdict *loser* (i.e. the defendant) by repeatedly citing portions of the defense case which the jury rejected in reaching its verdict." Brief for appellee at 3, n. 1.

While this standard of review is indeed axiomatic in cases wherein the court reviews the record for sufficiency of the evidence (cases such as *Commonwealth v. Davis, supra,* cited in the Commonwealth's brief) it is the Commonwealth that "unfortunately ... ignores the black-letter law" in the instant case. In reviewing the propriety of the trial court's refusal to give a defendant's requested points for charge to the jury, a reviewing court looks to whether the points for charge accurately set forth the relevant legal principles, whether evidence was introduced at trial from which the jury could apply those principles to the facts, and whether the court's instructions to the jury otherwise adequately covered the requested points for charge. *See,*

Corporal Boden and two other City of Chester police officers responded to a radio report on May 31, 1981 that a man was chasing children with an axe. The officers arrived at the home of that man, Marne Toogood, a large man whom Corporal Boden knew as being eccentric or deranged and, possibly, a practitioner of voodoo. (Mr. Toogood's voodoo reputation stemmed in part from his habit of displaying animal carcasses and skeletons on his front porch.) When one of the officers knocked on the front door, he was forcefully pushed back by Mr. Toogood who then picked up an axe handle and vigorously cursed at the officers to "get the hell off" of his property.

The officers backed away from the house and ordered Mr. Toogood to come out. He did come out, brandishing the axe handle in a threatening manner, and advanced toward Corporal Boden who warned him to drop the axe handle. When he did not, Corporal Boden drew his service revolver and fired what he described as a "warning shot." When Mr. Toogood continued to advance, Corporal Boden fired a second shot, which struck him in the face and dropped him to his knees. Stunned but conscious, the other officers kicked the axe handle away from Mr. Toogood.

Forensic evidence at trial indicates that both of Corporal Boden's shots struck Mr. Toogood in the face and that these bullets were "stale" and weak because Corporal Boden had not requested new ammunition for years. With a bullet protruding from his upper teeth, Mr. Toogood began to get up and move toward Corporal Boden again, according to the testimony of the three officers. Corporal Boden, alarmed and wondering "what the hell was going on in front of me now ... whether it was a superman, a freak of nature," fired his revolver a third time, striking Mr. Toogood in the chest and, unfortunately, killing him.

Corporal Boden was prosecuted for murder of the third degree and manslaughter. The Commonwealth's principal

*e.g., Commonwealth v. White,* 490 Pa. 179, 415 A.2d 399 (1980); *Commonwealth v. Brown,* 491 Pa. 507, 421 A.2d 660 (1980); *Commonwealth v. McComb,* 462 Pa. 504, 341 A.2d 496 (1975).

theory at trial was that Corporal Boden's killing of Mr. Toogood was not justified because he could not have reasonably believed that the use of deadly force was necessary to prevent death or serious bodily injury. The defense was that the killing was justified under the circumstances. In support of this defense, counsel requested several points for charge based upon various principles of justification codified at Chapter 5 of the Pennsylvania Crimes Code, 18 Pa.C.S.A. §§ 501–510. These points for charge included the following:

14. In this case, because the defendant was what is called a "peace officer", by reason of the fact that he was a policeman, special rules apply in determining whether the defendant's use of force was justified. A peace officer need not retreat or desist from efforts to make a lawful arrest merely because the person he is attempting to arrest resists or threatens to resist arrest. Furthermore, the Commonwealth has the burden of disproving the defense of justification. Thus, you cannot find the defendant guilty unless the evidence convinces you beyond a reasonable doubt that he did not [reasonably] believe that the force he used was necessary to make the arrest of Marne Toogood and to defend himself from bodily harm while making the arrest. [Pa. SSJI Crim. § 9.508A]

15. In this case, the defendant was what is called a "peace officer", by reason of his being a policeman for the City of Chester, and the evidence indicates that in making or attempting to make an arrest of Marne Toogood, the defendant may have used what is called "deadly force", which I define for you as force that was readily capable of causing death or serious bodily injury under the circumstances in which it was used. Special rules apply in determining the availability of the defense of justification when deadly force is used by a peace officer. A peace officer need not retreat or desist from efforts to make a lawful arrest merely because of resistance or threatened resistance to the arrest. Furthermore, the

Commonwealth has the burden of disproving the defense of justification. Thus, you cannot find the defendant guilty:

(1) unless the evidence convinces you beyond a reasonable doubt that he did not [reasonably] believe that deadly force was necessary to prevent death or serious bodily injury to himself; and

(2) unless the evidence also convinces you beyond a reasonable doubt that he did not believe either that deadly force was necessary to prevent Marne Toogood from avoiding arrest by resistance or that Marne Toogood

(i) had committed or attempted to commit the crime of aggravated assault or terroristic threats; or

(ii) was attempting to escape and possess the deadly weapon; or

(iii) had indicated that he would endanger human life or inflict serious bodily injury unless he was arrested without delay. [Pa. SSJI Crim. § 9.508B; 18 Pa.C.S.A. §§ 505, 508]

24. A public officer such as a policeman, justified in using force in the performance of his duties or in making an arrest, is not obliged to desist from such efforts to perform such duty or effect such arrest because of resistance or threatened resistance by or on behalf of the person against whom such action is directed. Thus, Officer Boden was under no duty to desist in his efforts to perform his duties with respect to Marne Toogood, or to arrest Marne Toogood, simply because Marne Toogood offered resistance or threatened resistance to him. [18 Pa.C.S.A. § 505(b)(2)(ii)(B) ] A policeman is under no duty to retreat when he is not exceeding his authority. *Commonwealth vs. Crowley*, 26 Pa.Super. 124 (1904)

26. A peace officer need not retreat or desist from efforts to make a lawful arrest because of resistance or threatened resistance to the arrest. He is justified in the use of any force which he believes to be necessary to effect the arrest and of any force which he believes to be necessary to defend himself or another from bodily harm

while making the arrest. He is justified in using deadly force only when he believes that such force is necessary to prevent death or serious bodily injury to himself. [18 Pa.C.S.A. § 508(a)(1)]

Defendant's Requested Points for Charge, Reproduced Record at 561a–569a.

The trial court denied these points for charge, and the jury returned a verdict of guilty of involuntary manslaughter. Appellant filed post verdict motions which alleged, *inter alia*, that the Court erred in refusing these various points for charge and in otherwise failing to adequately instruct the jury as to the duties and responsibilities of a police officer regarding the use of force. In rejecting this argument, the lower court reasoned that the points for charge dealing with the use of force in effectuating an arrest were irrelevant because the victim was "not placed under arrest" and because the issue of whether appellant violated a "duty to retreat" had not been placed at issue by the Commonwealth.

On appeal, the Superior Court correctly determined that the lower court erred in finding appellant was not attempting to arrest Mr. Toogood. 337 Pa.Super. 108, 486 A.2d 504, 505.[2] (Per Beck J., joined by Spaeth, P.J.; Tamilia, J., dissenting). Nevertheless, the Superior Court affirmed appellant's conviction on the grounds that "retreat was simply not part of the case" because it was not relevant to the

---

**2.** That court held:

> We conclude that appellant's action constituted an arrest. The victim's behavior against the officers amounted to a prima facie case of simple assault, a misdemeanor of the second class, 18 Pa.C.S. § 2701(a) & (b). A police officer may make a warrantless arrest for a misdemeanor he has witnessed.

> · · · · ·

> When an arrest occurs is a fact dependent on an evaluation of the surrounding circumstances.... Looking at the surrounding circumstances in the case sub judice, we conclude that appellant and his fellow officers were in the process of arresting the victim. Appellant had his gun drawn on the victim whose actions constituted simple assault. The victim's freedom was curtailed and the officers' conduct reflected an intention to take the victim into custody.

486 A.2d at 505–06 (citations omitted).

"central question in the case ... whether appellant reasonably believed that deadly force was necessary to prevent death or serious bodily injury." 337 Pa.Super. 108, 486 A.2d at 506. I quite agree with Judge Tamilia's dissenting opinion that the Superior Court majority has mischaracterized the issue presented by appellant in reaching its erroneous conclusion that the refusal of the trial court to charge the jury as requested did not deprive appellant of a fair trial. *Id.*, at 337 Pa.Superior Ct. 108, at 486 A.2d 506.

In a criminal prosecution for homicide, the Commonwealth has the burden of establishing each and every element of the offense charged beyond a reasonable doubt. Where there is any evidence at trial that the killing may have been done in self-defense, the Commonwealth, in order to obtain a conviction, must prove *at least one* of the following beyond a reasonable doubt: (1) that the defendant did not reasonably believe he was in danger of death or serious bodily injury; (2) that the defendant provoked the use of force; *or* (3) that the defendant had a duty to retreat and that retreat would have been possible with complete safety. *E.g., Commonwealth v. Jacobs*, 501 Pa. 139, 460 A.2d 728 (1983); *Commonwealth v. Upsher*, 497 Pa. 621, 444 A.2d 90 (1982).

The Commonwealth argues, as it did in the lower courts, that it proceeded in this case solely on the theory that appellant did not reasonably believe that he was in danger of death or serious bodily injury, and that, therefore, any "duty to retreat" was irrelevant. Both the trial court and the Superior Court, and apparently the majority of this Court, have accepted this argument. I do not, because this argument takes an inordinately narrow view of appellant's defense in this case and deprives the jury of information necessary to make a *reasoned* determination of whether appellant harbored such a "reasonable belief."

The defense in this case and the requested points for charge encompassed not simply appellant's defense of himself, as the Commonwealth asserts, but his defense of himself and of society in the context of a police officer

executing his sworn duties to enforce the law. That context is defined by statute, insofar as is relevant to this case, as follows:

### § 505. Use of force in self-protection

**(a) Use of force justifiable for protection of the person.**—The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

**(b) Limitations on justifying necessity for use of force.—**

\* \* \* \* \* \*

(2) The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily injury ...; nor is it justifiable if:

\* \* \* \* \* \*

(ii) the actor knows that he can avoid the necessity of using such force with complete safety by retreating ... *except that:*

\* \* \* \* \* \*

(B) *a public officer justified in using force in the performance of his duties ... or a person justified in using force in making an arrest or preventing an escape is not obliged to desist from efforts to perform such duty, effect such arrest or prevent such escape because of resistance or threatened resistance by or on behalf of the person against whom such action is directed.*

### § 508. Use of force in law enforcement

**(a) Peace officer's use of force in making arrest.—**

(1) *A peace officer,* or any person whom he has summoned or directed to assist him, *need not retreat or desist from efforts to make a lawful arrest because of resistance or threatened resistance to the arrest.* He is justified in the use of any force which he believes to be

necessary to effect the arrest and of any force which he believes to be necessary to defend himself or another from bodily harm while making the arrest. However, he is justified in using deadly force *only* when he believes that such force is necessary to prevent death or serious bodily injury to himself or such other person, or when he believes both that:

    (i) such force is necessary to prevent the arrest from being defeated by resistance or escape; and

    (ii) the person to be arrested has committed or attempted a forcible felony or is attempting to escape and possesses a deadly weapon, or otherwise indicates that he will endanger human life or inflict serious bodily injury unless arrested without delay.

(Emphasis added.)

The appellant's requested points for charge were patterned upon these statutory provisions regarding the justifications for a police officer's use of force, including deadly force. The trial court's refusal to read these points for charge, or to otherwise adequately recite the law regarding justification, prevented the jury from being fully informed as to the rights, authority and obligations of a police officer under the Crimes Code. In this regard, I am in complete agreement with Judge Tamilia's dissent:

Clearly, the issue of justification in this Commonwealth, when properly raised, is a factual one which must be resolved by the fact finder.... By erroneously holding that the arrest was not a legal arrest, the court denied the defendant an opportunity to have the jury consider the legal implications of that defense and to pass on the facts proposed by the defendant to establish his state of mind and the reasonableness of his actions. Under similar situations, a civilian would be required to retreat or desist if he could do so with safety, whereas a police officer was not. The court's failure to charge was even more prejudicial to the defendant as the District Attorney, in his brief, acknowledged that the Commonwealth did not attempt to overcome the appellant's claim of

self-defense as it applied to the duty to retreat or desist. By not attempting to disprove the officer's right to self-defense as to those elements, the District Attorney apparently believes he can control the defense's theory of the case by making it a non-issue.... The appellant has the right to a charge on justification to the fullest extent permitted by law, not to be controlled by the Commonwealth's theory, and ... not to be limited by the court's or the Commonwealth's interpretation of the facts, but those proposed by the defendant and considered by the jury as it is guided by the relevant law.

337 Pa.Superior Ct. at 114, 486 A.2d at 507 (citations omitted).

Even though it was not argued by the Commonwealth that appellant violated a duty to retreat, the fact that a police officer is not required to retreat or desist from efforts to make a lawful arrest when met with resistance would surely have had a direct bearing on the jury's determination of the reasonableness of Corporal Boden's belief that deadly force was necessary. In assessing the reasonableness of his belief, the jury should have been fully informed of the demands that society has placed upon a police officer in requiring that officer to stand his ground in making arrests and executing his duties, demands which society does not place upon private citizens.

As noted, moreover, the trial court's instructions to the jury did not *otherwise* inform the jury adequately as to a police officer's authority and responsibilities under the Crimes Code. The opinion of the court denying appellant's post verdict motions identifies the following portions of the jury charge as proof that "the jury was instructed that it could find that the shooting was justified by a valid law enforcement purpose," as follows:

In this case justification is a defense if Defendant, Thomas Boden, a police officer, reasonably believed that his actions were required or authorized by law, and specifically if his actions were required in the performance of his duties as a police officer of the City of Chester in maintaining law and order on the streets of the City of

Chester and in keeping the city streets safe. Justification is a defense if Officer Boden reasonably believed that his actions were necessary in order to prevent and restrain Marne Toogood from jeopardizing the lives of the people on East Tenth Street with his acts and with his conduct. Because the Commonwealth has the burden of disproving the defense of justification, you may find the Defendant guilty only if you are satisfied beyond a reasonable doubt that he did not reasonably believe that his conduct was required or authorized by law.

Notes of Testimony (N.T.), October 8, 1981, 4–42 and 4–43. Comparison of the court's instructions to the jury with the appellant's requested points for charge and the Crimes Code discloses the inadequacy of the court's charge concerning a police officer's use of force and the parameters of his authority and responsibility. The reasonableness of a police officer's belief that he needs to use deadly force is not to be determined in a vacuum. The determination of reasonableness must take into account all of the relevant facts and circumstances *including his status, duties, and obligations as a police officer.*

The reasonableness of Corporal Boden's belief that deadly force was necessary was obviously of crucial importance. The facts and circumstances surrounding the unfortunate incident were before the jury; however, the jury was deprived of critical information regarding Corporal Boden's authority and responsibility as a police officer attempting to subdue a dangerous person and effectuate an arrest. This deficiency is particularly accute because the Commonwealth did bring out, in its cross-examination of Corporal Boden, that there was a vacant lot behind him and "there was nothing behind [him] which would have prevented [him] from retreating ..." N.T., October 7, 1981 at 3–89. Superior Court dismissed this reference as "irrelevant" since it was the only reference to "retreat" among 540 pages of transcript. 486 Pa. at 506, n. 2. I cannot accept this characterization. Though the reference to Corporal Boden's ability to retreat may have been "fleeting", it certain-

ly was not "irrelevant." The seed of "retreat" was planted by this reference and from there it might well have grown. This is especially likely here because the trial court's instructions were confusing and vague, thus necessitating repeated requests by the jury for clarifying instructions (five requests for clarification were made on three separate occasions) and lengthy deliberations (the deliberations extended from late afternoon to 11:30 p.m. on October 8, 1981 and from 9:30 a.m. to 6:30 p.m. on October 9, 1981, approximately) in reaching its verdict. As Judge Tamilia stated, we "can only guess as to what a jury would have done if given the requested instruction." 337 Pa.Superior Ct. at 114, 486 A.2d at 507.

Our police officers should be held accountable for the excessive and unreasonable use of force. However, as the keepers of the peace and enforcers of the law, they must, in return, receive the fullest measure of protection provided by that law. In my view, the lower court erred in refusing to give appellant's requested points for charge and in failing to adequately instruct the jury as to a police officer's authority and responsibility in using force, including deadly force, to effectuate a lawful arrest within the parameters established by the Crimes Code.

The majority perpetuates the lower courts' error in this regard, and compels my dissent.

McDERMOTT, Justice, dissenting.

Parties to an action, civil or criminal, appear in such legal personae as required by that action and bear the inherent advantages and disadvantages. In the instant case the appellant appeared in, among others, the persona of a police officer and pled self defense in the course of his duties. A police officer is not required to retreat in pursuance of his duties. Therefore, appellant in that persona, was entitled to such a charge which the trial court refused.

We do not know what effect such a charge would have had upon the apparently bitter facts of this case. For that reason I dissent and remain unsatisfied. All that should have been done, was not; what now seems truth in the

solidified verdict of the jury remains a truth short of all that it should have been, because all was not done as the law requires. A truth so fashioned, is only true in its own context, and unless a context is the full legal context it ought to be, for our purposes, it can be nothing.