509 A.2d 1314

**COMMONWEALTH of Pennsylvania**

**v.**

**Joseph McMANUS, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 29, 1985.

Filed June 2, 1986.

Gary B. Zimmerman, Pittsburgh, for appellant.

Robert L. Eberhardt, Deputy District Attorney, Pittsburgh, for Commonwealth, appellee.

Before WIEAND, DEL SOLE and HESTER, JJ.

HESTER, Judge:

This is an appeal from judgment of sentence entered in Allegheny County on October 17, 1984. Appellant, Joseph McManus, was adjudged guilty at a non-jury trial of third degree murder. Post-verdict motions were filed and denied, and he was sentenced to undergo imprisonment of not less than eight nor more than twenty years.

On October 2, 1983, the body of Ralph Novak was discovered in Arsenal Park in the Lawrenceville section of Pittsburgh. A pathologist determined that Novak's death was due to severe trauma. The pathologist opined that lacerations, contusions, hemorrhaging and bone fractures of the head were caused by blows from a blunt object. Numerous contusions and abrasions were also discovered over the victim's torso and extremities, and one of his cervical vertebrae was fractured. It was the pathologist's opinion that either the head injuries or the fractured vertebra was sufficient to cause death.

Investigating officers discovered the victim's naked body on cement steps connecting a wading pool with a higher level of the park. A trail of blood across the pool, line markings on his torso and the crumpling of his two shirts over his chest and head indicated that the victim had been dragged as well as beaten. Hair and blood, matching the

victim's, were discovered on the iron legs of a nearby park bench.

Appellant raises the following three arguments:

1. The trial court erred in admitting appellant's incriminating statement to homicide detectives because he was arraigned more than six hours after arrest;

2. The trial court erred in admitting the incriminating statement because appellant, a juvenile, was not accorded the benefit of consulting an informed and interested adult upon being taken into custody; and

3. The trial court erred in admitting the incriminating statement because appellant did not voluntarily waive his rights under the fifth and sixth amendments.

In *Commonwealth v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1977), our supreme court held that all statements made by the accused after arrest but before arraignment were inadmissible when arraignment was not held within six hours of arrest. The *Davenport* court was concerned about the frequency of suppression hearings. By setting a time restriction for the period between arrest and arraignment, the *Davenport* court hoped to reduce pre-trial delay, the burden on prosecution and defense resources, and violations of the accused's rights to counsel, bail, a preliminary hearing and prompt instructions on the nature of the charges. Pa.R.Crim.P. 140.

■ We are not bound by *Davenport*, however, because appellant's incriminating statement was uttered prior to arrest. Since the six-hour period commences at the time of arrest, its running cannot preclude the admission of statements made before arrest.

In reviewing an order denying suppression, we are bound by the factual determinations supported by the record, *Commonwealth v. Wiggins*, 472 Pa. 95, 371 A.2d 207 (1977), and we may not impose our own findings on the suppression court. *Commonwealth v. Davis*, 491 Pa. 363, 421 A.2d 179 (1980). We are to consider only the Commonwealth evidence and the remaining uncontradicted defense evi-

dence. *Commonwealth v. Goodwin*, 460 Pa. 516, 333 A.2d 892 (1975). Although we must defer to the trial court, we are not bound by findings wholly unsupported by the record. *Commonwealth v. Hamlin*, 503 Pa. 210, 469 A.2d 137 (1983); *Commonwealth v. Hall*, 475 Pa. 482, 380 A.2d 1238 (1977).

When the time of arrest is not clear because no formal arrest is made, arrest occurs when the officers' actions indicate their intention to detain a suspect and subject him to their will. *Commonwealth v. Farley*, 468 Pa. 487, 364 A.2d 299 (1976); *Commonwealth v. Benson*, 280 Pa.Super. 20, 421 A.2d 383 (1980). Whether an arrest has occurred depends upon the impression conveyed to the person detained, not upon the officers' subjective intentions. *Commonwealth v. Holmes*, 482 Pa. 97, 393 A.2d 397 (1978).

The parties agreed that appellant had been arraigned at 10:00 A.M. on October 3, 1983. It was also undisputed that appellant had not been formally arrested. The trial court concluded that the exact time of the arrest was not critical; it was only necessary to determine whether arrest had occurred after the incriminating statement. Inasmuch as *Davenport* excludes only statements made *after* arrest, the trial court held that the statement here was admissible as it occurred *prior* to arrest. We agree.

Detective David J. McManus, of the Allegheny County homicide division, was at home on October 2, 1983, when he received a telephone call from his son at 10:00 P.M. His son told him that appellant, who was the detective's nephew, wanted to speak with him. His son also relayed his conversation with appellant which provided information on the Arsenal Park murder.

McManus returned appellant's call, and appellant corroborated the information McManus had received from his son. Appellant told the detective that he had attended a bachelor party for his codefendant, Mark Michalski. According to appellant, Michalski left the party at 3:00 A.M. on October 2, 1983. He returned presently and asked appellant to

accompany him to Arsenal Park. Appellant did so, and Michalski led him to what appellant thought was a dummy. Michalski kicked the dummy, and both young men dragged it around the park. Appellant then said that the dummy was heavy, and that they may have left it by the park fountain. Appellant returned to the party and then was driven home by a friend. After giving this statement, appellant agreed to ride with McManus to the Public Safety Building in Pittsburgh to repeat it for investigating officers of the city homicide division.

Appellant incriminated himself when he told investigating officers at the police station that he may have flipped a park bench on the victim's head. His arrest immediately followed because Detective McManus informed him that he was "in trouble" and that he was not free to leave. Until arrest, however, there was substantial evidence that appellant was merely considered an eyewitness.

First, it is important to note that appellant voluntarily called McManus to offer information of the crime; there was no evidence that he was coerced to come forward. During the telephone conversation with McManus, appellant did not alter or add to the information that McManus had received from his son. Therefore, both telephone conversations were not incriminatory as appellant had described how Mihalski kicked the dummy and how they both dragged it.

After receiving his statement by telephone, McManus asked appellant to accompany him to the police station so that he could repeat the statement to investigating officers. There was no indication that McManus unduly pressured appellant into accompanying him.

Also, it is significant that McManus was appellant's uncle. As a demonstration of his concern for his nephew, the detective called appellant's father prior to driving appellant to the station and assured him that he would care for him. Therefore, the record indicates that McManus was acting as a relative as well as a law enforcement officer in his treatment of appellant.

Upon arrival at the police station, appellant was left unattended without handcuffs in a room having an unlocked door. When he spoke with interrogating officers, his uncle was always present to offer advice and assurance. The pre-interrogation form noted that appellant was not in custody nor under arrest; indications that appellant was considered an eyewitness only. On two more occasions, appellant assured the officers that he was not culpable. It was not until the end of the interview at 1:00 A.M. when appellant incriminated himself.

We note that the officers instructed appellant that he was not in custody. Moreover, it was apparent that appellant was free to wander throughout the station.

Finally, appellant's own testimony at the suppression hearing indicates that he believed he was not in custody even after making the incriminating statement.

Q   And do you recall what your uncle told you while you were in that room?

A   Well, I asked him, I said Unc, do you think I can go home. And he said no, I don't think so, you are in a little bit of trouble.

Q   Was this before you made the statement?

A   This was *after* I made the statement.

(Emphasis added)   (N.T. March 5, 1984, p. 142).   It is doubtful that appellant would have requested to go home if he believed he had been arrested for homicide.

■  For these reasons, we hold that appellant believed that he was not in custody until he incriminated himself. As a result, his statement was admissible without regard to the six-hour rule.

■  For the same reasons, we reject appellant's argument that the statement was not admissible because he was not accorded the benefit of consulting an informed and interested adult prior to waiving his constitutional rights. The validity of a minor's waiver is now reviewed under the totality of the circumstances. *See Commonwealth v. Williams*, 504 Pa. 511, 475 A.2d 1283 (1984).   Considering

appellant's age of seventeen years, the presence of his uncle at the time he waived his rights, and the fact that he was not harshly treated, we hold that the absence of an informed and interested adult was not constitutionally infirm. Due to these same totality of the circumstances, appellant's waiver was voluntary, knowing and intelligent.

Judgment of sentence affirmed.