528 A.2d 195

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**John W. GILBERT, Vincent Gilbert, Appellees.**

Superior Court of Pennsylvania.

Argued Nov. 5, 1986.

Filed June 23, 1987.

Gaele M. Barthold, Deputy District Attorney, Philadelphia, for Commonwealth, appellant.

Richard H. Knox, Philadelphia, for appellee (at 2177).

Peter Rosalsky, Assistant Public Defender, Philadelphia, for appellee (at 2178).

Before McEWEN, DEL SOLE and KELLY, JJ.

McEWEN, Judge:

The Commonwealth has undertaken these appeals from an order which suppressed the inculpatory statements of appellees John Gilbert and Vincent Gilbert. We have consolidated these appeals for consideration of the sole issue presented by both appeals, namely, whether the preliminary arraignment of the brothers was held within six hours after their arrest, pursuant to the rule established by the Pennsylvania Supreme Court in *Commonwealth v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1977). We conclude that the order of suppression must be reversed.

Our first task is, of course, to determine whether the factual findings of the suppression court are supported by the record, *Commonwealth v. Monarch*, 510 Pa. 138, 146, 507 A.2d 74, 78 (1986); *Commonwealth v. Fischer*, 348 Pa.Super. 418, 420, 502 A.2d 613, 614 (1985), for the law is clear that we are bound by such factual findings of the suppression court as are supported by the record. *Commonwealth v. Chamberlain*, 332 Pa.Super. 108, 111, 480 A.2d 1209, 1211 (1984); *Commonwealth v. Chiesa*, 329 Pa.Super. 401, 403, 478 A.2d 850, 851 (1984). We are not, however, bound by the conclusions of law reached by the hearing court and we may reverse the suppression court when those conclusions are in error. *Commonwealth v. Brown*, 328 Pa.Super. 207, 209, 476 A.2d 965, 966 (1984).

The opinion of the distinguished hearing judge reflects his careful analysis of the record and thoughtful study of the prevailing principles of law. Moreover, our conclusion relies upon the following findings of the hearing court:

Vincent Gilbert completed his statement to the police at 1:50 a.m., while the statement of John Gilbert was completed at 3:03 a.m.

Vincent Gilbert was arraigned at 4:12 a.m., two minutes after his brother John had been arraigned at 4:10 a.m.

We differ, however, with the conclusions of the hearing court that John Gilbert was placed under arrest at 10:05 p.m., and that Vincent Gilbert was placed under arrest at 10:10 p.m., since our review of the record leads us to conclude that each of the arrests occurred several minutes thereafter and, as a result, within the crucial six hour period prior to arraignment, the focus of the Supreme Court mandate in *Davenport, supra*.

It has long been the law in this Commonwealth that an arrest will be deemed to have occurred where a police officer acts with the intention to take a person into custody and subject that person to his or her will and control. *Commonwealth v. Bosurgi*, 411 Pa. 56, 68, 190 A.2d 304, 311 (1963), *cert. denied Bosurgi v. Pennsylvania*, 375 U.S. 910, 84 S.Ct. 204, 11 L.Ed.2d 149 (1963); *Commonwealth v.*

*Boden,* 337 Pa.Super. 108, 109, 486 A.2d 504, 505 (1984), *aff'd.* 510 Pa. 287, 507 A.2d 813 (1986); *Commonwealth v. Rodriquez,* 330 Pa.Super. 295, 302, 479 A.2d 558, 562 (1984); *Neitz v. Commonwealth, Department of Transportation,* 96 Pa.Cmwlth, 1, 4, 506 A.2d 961, 963 (1986). " 'Whether an arrest has occurred depends upon the impression conveyed to the person detained, not upon the officer's subjective intentions.' " *Commonwealth v. Lagana,* 356 Pa.Super. 132, 136, 514 A.2d 179, 181 (1986), *quoting Commonwealth v. McManus,* 353 Pa.Super. 355, 359, 509 A.2d 1314, 1316 (1986).

The testimony discloses that appellee Vincent Gilbert, aware that he had become the object of a search by individuals bent on retaliation by reason of an accusation of rape made against him, sought the safety of the protective custody of the police, and found such refuge between 10:00 p.m. and 10:05 p.m. when he came upon Officer Brenda Stowe and accepted the sanctuary of her patrol car. Officer Stowe and her passenger, Vincent Gilbert, then proceeded through the neighborhood to locate "the people that were going to beat him up", and actually "stopped a few people who were chasing him". It was at that time that Officer Stowe received a radio call to proceed to a disturbance a few blocks away, where she encountered "a disorganized crowd, a disturbance". It was there that she observed John Gilbert being placed by police officers in a patrol wagon and away from the crowd, and where she watched the victim of the rape, in "ranting and raving" fashion, identify Vincent Gilbert, the passenger in her police car, as a rapist. Officer Stowe further testified that when her supervisor arrived at 10:17 p.m., she was still "investigating Mr. Gilbert, [the rape victim] and the whole particular situation". It was when the supervisor thereafter related that the victim had filed a criminal complaint for rape, that the brothers were subjected to arrest and, at 10:20 p.m., transported to the police station for interrogation.

No one will dispute that the police officer assigned to patrol the streets of Philadelphia during the hot nights of summer must ever be intensely alert since the officer will in

the next moment likely confront disturbance or disaster, each accompanied by grave personal danger. And, of course, once the patrol officers delivered appellees to the arraigning officers in the police station, to the street they had to promptly return, knowing their hope—that their presence will establish calm—to be a vain one.

The record reveals that the turbulence that here beset the patrol officers commenced between 10:00 and 10:05 p.m. on that July night and saw:

Vincent Gilbert thwart threats of harm by seeking the protective custody of a patrol car.

The police undertake to patrol the area to locate the angry crowd.

John Gilbert taken from the midst of the crowd and placed in a patrol wagon.

The victim of the rape, in "ranting and raving" fashion, accuse her attackers.

The command officer advise the patrol officers that the victim had filed a formal complaint of the rape.

█ Thus, we conclude that the arrest of appellees did not occur when they were separately rescued by the police and placed in police vehicles, nor even at the moment that the victim excitedly accused them, since the tumult reflected by the record would not permit the patrol officers to so quickly conclude that their passengers were felons and subject to arrest. Rather, the arrests took place when the supervising officer at 10:17 p.m. advised the patrol officers that the victim had filed a rape complaint, and thereby transformed the status of appellees from that of protected to that of prisoners.

█ It may not be doubted that these events would consume several minutes, and that the officers would need a few further minutes to "sort out" the turmoil of all of the events. And, of course, the clarity provided by the report of the police supervisor that the victim had filed a complaint of rape enabled the patrol officers to respond decisively and to transport them from the site as prisoners. Since, therefore, the arrest did not occur prior to 10:17, the arraign-

ments of John Gilbert at 4:10 a.m. and of Vincent Gilbert at 4:12 a.m. were accomplished within the standard enunciated in *Davenport, supra.*

The performance of Officer Stowe throughout the entire occurrence was exemplary—she protected the quarry of an angry mob, she responded to the cries of the victim, and she arrested the alleged assailants when probable cause was established. The assertions of appellees, on the other hand, would have required the police to have provided for stop-watch-videotape-replay recordings of their performance, a refinement suitable for games and athletic contests, but hardly appropriate for the deadly serious pursuit and prosecution of the marauders of our society.

The conclusion follows that the arraignment officers completed their assignment before the six hour period from the arrest expired, and, therefore, the order which suppressed the statements of appellees must be reversed, and the case remanded for trial.[1]

Order reversed. Case remanded for trial. Jurisdiction relinquished.

DEL SOLE, J., files a concurring opinion.

1. The Pennsylvania Supreme Court recently modified Davenport when it decreed that statements of an accused made within six hours of an arrest will not be suppressed solely because the arraignment was not held within six hours of the time of the arrest. *Commonwealth v. Duncan,* 514 Pa. 395, 407, 525 A.2d 1177, 1183 (1987). The statements we here review were both made within five hours of the moment when appellees claim the arrest occurred, and thus, the order of suppression must be reversed by reason of the Duncan decision as well.

The Davenport rule does permit an exception, specifically, the "exigent circumstances" exception which becomes applicable if there was an acceptable reason for the failure of the stationhouse officers to arraign the accused within six hours. Logic, common sense and a focus that balances the interests of the victim, as well as of the accused, provide a sound basis for the argument that the "exigent circumstances" exception is every bit as applicable to a study of the moment when the countdown commences—as here, when the precise time of the arrest is the crucial issue—as it is to an examination of the moment when the countdown ceases. This proposition, however, need be neither addressed nor resolved in view of the decision we here reach.

360

DEL SOLE, Judge, concurring:

I concur with the result reached by my colleagues but I believe that this case is controlled by our Supreme Court's recent holding in *Commonwealth v. Duncan*, 514 Pa. 395, 525 A.2d 1177 (1987). *Duncan* modifies the *Davenport* rule so that statements of an accused not obtained through illegality within six hours of an arrest, will not be suppressed solely because arraignment was not held within six hours of such arrest. Therefore, the statements of the Appellees herein which were made within five hours of their respective arrests (as determined by the trial court) should not be suppressed. Unlike the majority, I see no reason to challenge the trial court's findings of fact since these findings are duly supported by the record.