546 A.2d 654

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Stephen Douglas ELLIOTT and Troy Lancy Ray, Appellees.**

Superior Court of Pennsylvania.

Submitted April 5, 1988.

Filed Aug. 5, 1988.

538

540

James M. Schall, District Attorney, McConnellsburg, for Com., appellant.

David S. Keller, Waynesboro, for Elliott, appellee.

Patrick J. Redding, Chambersburg, for Ray, appellee.

Before BROSKY, MONTEMURO and JOHNSON, JJ.

MONTEMURO, Judge:

This is an appeal by the Commonwealth from an order of the Court of Common Pleas of Fulton County suppressing various items of contraband seized from Stephen D. Elliot and Troy Lancy Ray. The seizure of these items occurred following a stop of the vehicle in which the two were traveling for a Motor Vehicle Code violation. We reverse.

The uncontroverted testimony at the suppression hearing depicted the following events leading up to the present appeal. In the late afternoon hours on March 26, 1986, Trooper Darryl E. Heckman of the Pennsylvania State Police began to follow a 1977 Oldsmobile Coupe owned and operated by Stephen Elliot. Accompanying Elliot was one Troy Lancy Ray. Trooper Heckman observed an object hanging from the inside rearview mirror of the Elliot vehicle. Believing that the object might materially obstruct the driver's view through the windshield, a violation of Section 4524(c) of the Motor Vehicle Code, Trooper Heckman pulled the vehicle over. When he arrived at the driver's side window and requested to see Elliot's operator's license and registration card, Trooper Heckman observed a bag of ice with beer in it located behind the passenger's seat where Ray was sitting. He also noticed a strong odor of alcohol emanating from the vehicle and several empty beer bottles strewn throughout the interior of the vehicle.

Trooper Heckman ascertained that Elliot was 21 years of age but suspected that Ray was under the legal age for consumption of alcoholic beverages. With this in mind he proceeded to the passenger's side window and asked Ray to produce identification. Ray had no identification, but informed the officer that he was 19 years old. Trooper Heckman then requested Ray to step outside the vehicle. As Ray proceeded to open the door and exit the vehicle, an open bottle of beer, which was apparently wedged between the door and Ray's leg, spilled out onto the road. As Trooper Heckman bent down to pick up the fallen bottle, he observed a clear plastic baggie containing what appeared to be marijuana protruding from under the passenger's seat. He seized the bag, and after confirming his suspicion that the bag contained marijuana, he attempted to ascertain whether he could detect alcohol on Ray's breath. Detecting the odor of beer on Ray's breath, Trooper Heckman ordered both Ray and Elliot to go and place their hands on the police cruiser. He patted down Ray and found a folding knife in Ray's back pocket. Trooper Heckman's pat down of Elliot uncovered a "stash kit" [1] in Elliot's right front pocket and a bag of marijuana in his left front pocket. After reading both Elliot and Ray their *Miranda* rights, Trooper Heckman called Trooper Good for assistance. While waiting for Trooper Good to arrive, both Elliot and Ray admitted to Trooper Heckman that more drugs were in the vehicle. Upon Trooper Good's arrival, Elliot was asked to consent to a search of his vehicle. Although hesitant at first, Elliot signed a written consent form when Trooper Good confronted him with the fact that there was sufficient basis to obtain a search warrant in the event that he refused to consent. The subsequent search of the car uncovered numerous items of contraband, including: packets of hashish, hallucinogenic mushrooms, 280 hits of LSD, a bag of marijuana, cigarette rolling papers, a pair of ten inch forceps, and $1100 in cash. Based on the items seized, Trooper

1. A "stash kit" is a hollow wooden box approximately four inches long, two inches wide and one-half inch thick, which is used to store marijuana and contains a small marijuana pipe.

Good filed a complaint charging both Elliot and Ray with various violations of the Controlled Substance, Drug, Device, and Cosmetic Act.[2] In addition, he charged Elliot with a violation of Section 4524(a) of the Motor Vehicle Code.[3] Both parties filed a motion to suppress the evidence alleging that the evidence was the fruit of an unconstitutional search and seizure in violation of the United States and Pennsylvania Constitutions. The suppression court concluded that while the initial stop of the vehicle was permissible, it was unlawful for the Trooper to order Ray, the passenger, out of the vehicle in the absence of a reasonable suspicion that Ray was armed and dangerous. As a result, the trial court suppressed all evidence obtained after Ray was ordered from the vehicle as "fruit of the poisonous tree". This timely appeal by the Commonwealth followed.

■ Before addressing the merits of the Commonwealth's appeal, we must determine whether the order appealed from is final. In *Commonwealth v. Dugger,* 506 Pa. 537, 486 A.2d 382 (1985), our supreme court discussed the circumstances under which the Commonwealth may appeal an unfavorable suppression order. The court stated:

[t]he Commonwealth's appeal of a suppression order is proper as an appeal from a final order *when the Commonwealth certifies in good faith that the suppression order terminates or substantially handicaps the prosecution.* Such certification is required as a means of preventing frivolous appeals and appeals intended solely for delay.

*Id.,* 506 Pa. at 456–457, 486 A.2d at 386 (emphasis added). As *Dugger* indicates, the Commonwealth's right to appeal an unfavorable suppression order is not absolute, but rather is a qualified right. To accord a suppression order the attribute of finality necessary to 'justify the grant of the right of appeal to the Commonwealth....', the Common-

2. 35 Pa.S.A. § 780–101 et seq.

3. 75 Pa.C.S.A. § 4524(a). While Trooper Heckman stated that he believed Elliott was in violation of § 4524(c), Trooper Good charged him with a violation of § 4524(a).

wealth must certify in good faith that the suppression order substantially handicaps or terminates the prosecution. *Id.*; *See also Commonwealth v. Conway*, 368 Pa.Super. 488, 534 A.2d 541 (1987). The failure to comply with the certification requirement renders the suppression order interlocutory and subject to being quashed. *See Commonwealth v. Duncan*, 514 Pa. 395, 410, 525 A.2d 1177, 1184 (1987) (Hutchinson, J., dissenting); *Commonwealth v. Hoffman*, 367 Pa.Super. 79, 532 A.2d 463 (1987) (Statement that suppression order substantially handicapped the prosecution properly invoked the jurisdiction of the court from an otherwise interlocutory order); *Commonwealth v. Goodman*, 347 Pa.Super. 403, 408 n. 3, 500 A.2d 1117, 1120 n. 3 (*en banc*) (1985). Because the Commonwealth has complied with the certification requirement, the suppression order is final order and this appeal is properly before us.

The question presented in this case is whether a police officer who has lawfully stopped a vehicle for a suspected Motor Vehicle Code violation may, consistent with the Fourth Amendment, order a passenger to exit the vehicle when the passenger is suspected of committing a crime, and, if so, whether the trial court erred in excluding the fruits of the warrantless searches that followed.

We note that in reviewing the the propriety of a suppression order:

> [we are] limited primarily to questions of law [,and] are bound by the suppression court's findings of fact, if those facts are supported by the record. In determining whether the findings of fact are supported by the record, we are to consider only the evidence of appellee and so much of the evidence of the appellant which, as read in the context of the record as a whole, remains uncontradicted. It is for the suppression court as the trier of fact, rather than the reviewing court, to determine credibility.

*Commonwealth v. White*, 358 Pa.Super. 120, 123, 516 A.2d 1211, 1212 (1986) (citations omitted).

■ The Fourth Amendment of the United States Constitution provides that "the right of the people to be secure in

their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated...." U.S, Const.Amend. IV.[4] Traditionally, seizures of the person required probable cause in order to be permissible under the Fourth Amendment. A seizure of the person effectuated without probable cause renders all evidence obtained as a result of the illegality inadmissible at trial. *See Commonwealth v. Lovette,* 498 Pa. 665, 450 A.2d 975 (1982). Beginning with *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), however, the Supreme Court recognized that certain investigative seizures of an individual need not be supported by probable cause. In *Terry,* the Court held that a police officer may conduct a "stop and frisk" of an individual "for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest" so long as the officer is "able to point to specific and articulable facts which give rise to a reasonable suspicion of criminal activity." *Id.* at 21–22. Indeed, our own supreme court has stated that *Terry* and its progeny recognize "that some seizures covered by the Fourth amendment constitute such limited intrusions on the personal security of those detained and are justified by such substantial law enforcement interests that they may be made on less than probable cause, so long as the police have an articulate basis for suspecting criminal activity." *Lovette, supra* at 673, 450 A.2d at 979, quoting *Michigan v. Summers,* 452 U.S. 692, 699, 101 S.Ct. 2587, 2592, 69 L.Ed.2d 340 (1981). The question of when an investigative stop crosses the line and becomes an arrest is often a perplexing one. There is no "litmus paper test for determining when a seizure exceeds the bounds of an investigative stop" and becomes an arrest. *Florida v. Royer,* 460 U.S. 491, 506, 103 S.Ct. 1319, 1329, 75 L.Ed.2d 229 (1983). However, it is clear that the focus of the analysis must always be "the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security", which is determined by balancing "the public

4. The Pennsylvania Constitution contains a nearly identical provision. *See* Pa. Const. Art. I, § 8.

interest and the individual's right to personal security free from arbitrary interference by law officers." *Pennsylvania v. Mimms*, 434 U.S. 106, 109, 98 S.Ct. 330, 332, 54 L.Ed.2d 331 (1977). The reasonableness of the intrusion is determined by examining two factors:

> (1) whether there was a proper basis for the stop, which is judged by examining whether the law enforcement officials were aware of specific and articulable facts which gave rise to reasonable suspicion; and (2) whether the degree of intrusion into the suspect's personal security was reasonably related to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances.

*United States v. Hardnett*, 804 F.2d 353, 356 (6th Cir.1986).

In the present case the suppression court found that while the initial stop of the vehicle for a suspected Motor Vehicle Code violation was reasonable, the officer's ordering Ray out of the vehicle constituted an unreasonable intrusion on his personal security. The court based its decision on the case of *Pennsylvania v. Mimms, supra,* and concluded that that case stands for the proposition that a police officer may only order a passenger out of a vehicle when he possesses a reasonable suspicion that he is armed and dangerous.[5]

It is clear that a police officer may stop a motor vehicle if he or she reasonably believes that a provision of the Motor Vehicle Code is being violated. 75 Pa.C.S.A. § 6308; *Commonwealth v. Fisher*, 294 Pa.Super. 486, 440

---

5. We note that the state, under its own constitution, "has the power to impose standards on searches and seizures higher than those required by the Federal Constitution." *Commonwealth v. DeJohn,* 486 Pa. 32, 43, 403 A.2d 1283, 1288 (1979). However, where it is not clear from the face of the trial court's opinion whether it is based on the state or federal constitutional provision, we will assume that the trial court decided the case the way it did under the mandate of federal law. *Accord Michigan v. Long,* 463 U.S. 1032, 1042, 103 S.Ct. 3469, 3477, 77 L.Ed.2d 1201 (1983). In the instant case there is nothing in the trial court's opinion which indicates anything other than reliance on federal constitutional principles.

A.2d 570 (1982); *See also Commonwealth v. Swanger*, 453 Pa. 107, 112, 307 A.2d 875, 879 (1973). Trooper Heckman had a reasonable belief based on his observations that the object hanging from the rearview mirror obstructed the driver's view in violation of § 4524 of the Vehicle Code. Consequently, the initial stop of the Elliot vehicle was reasonable under the circumstances. The more difficult question is whether the suppression court erred in concluding that Trooper Heckman's order to Ray, the passenger, to step from the vehicle constituted an unreasonable invasion in the absence of a reasonable suspicion that he was armed and dangerous. We believe that the suppression court erred in so concluding. The court's error results from a misapprehension of the United States Supreme Court's ruling in *Mimms, supra.*

In *Mimms*, the officers stopped the defendant for the purpose of issuing a citation after they observed him driving with an expired license plate. One of the officers approached the vehicle and requested the defendant, who was driving, to step out of the vehicle and produce his operator's license and owner's card. There was no reason that the officer requested the defendant to exit the vehicle other than the fact that it was his customary practice to order all drivers out of their vehicles whenever he made a stop for a traffic violation. When the defendant alighted from the vehicle, the officer observed a bulge under his sports jacket. The subsequent pat down revealed a .38 caliber pistol concealed in the defendant's waistband. In addition, the officers frisked the passenger and discovered a .32 caliber handgun. The Pennsylvania Supreme Court found that the gun seized from defendant should have been suppressed because it was the fruit of an unconstitutional intrusion. Specifically, the Pennsylvania Supreme Court concluded that the order to the defendant to get out of the car, in the absence of facts supporting a reasonable suspicion that criminal activity was afoot or that the occupants were armed and dangerous, constituted an impermissible seizure. The United States Supreme Court granted certiorari and addressed the "narrow question of whether the

order to get out of the car, issued after the driver was lawfully detained was reasonable and thus permissible under the circumstances." *Id.* at 109, 98 S.Ct. at 332. In finding that the order to get out of the car was not an unreasonable seizure, the Court stated:

> We think it too plain that the State's proffered justification—the safety of the officer—is both legitimate and weighty. 'Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties.' And we have specifically recognized the inordinate risk confronting an officer as he approaches a person seated in an automobile. 'According to one study, approximately 30% of police shootings occurred when a police officer approached a suspect seated in an automobile.... [In addition], [t]he hazard of accidental injury from passing traffic to an officer standing on the driver's side of the vehicle may also be appreciable in some situations.... Against this important interest we are asked to weigh the intrusion into the driver's personal liberty occasioned not by the initial stop of the vehicle, which was admittedly justified, but by the order to get out of the car. We think this additional intrusion can only be described as de minimis. The driver is being asked to expose to view very little more of his person than is already exposed. The police have already lawfully decided that the driver shall be briefly detained; the only question is whether he shall spend that period sitting in the driver's seat of his car or standing alongside it. Not only is the insistence of the police on the latter choice not a 'serious intrusion upon the sanctity of the person', but it hardly rises to the level of a 'petty indignity.' What is at most a mere inconvenience cannot prevail when balanced against legitimate concerns for the officer's safety.

*Id.* at 110–111, 98 S.Ct. at 333. (citations omitted).

▪ In view of this reasoning, we believe that Trooper Heckman was justified in ordering Ray, the passenger, out of the car. Indeed, the safety of the officer, which is the

proffered justification for ordering the driver out of the vehicle, applies with equal force to the passenger of a vehicle stopped for a traffic violation. *Id.* at 123, 98 S.Ct. at 339 (Stevens, J., dissenting). *Accord Commonwealth v. Chamberlain,* 332 Pa.Super. 108, 480 A.2d 1209 (1984), quoting *United States v. Berryhill,* 445 F.2d 1189 (9th Cir.1971) (*Terry* type of limited intrusion extends to companions of arrestee capable of accomplishing the harmful result). Additionally, Trooper Heckman did not simply order Ray out of the vehicle as a matter of course, but was able to articulate a tenable reason for his actions. Trooper Heckman observed beer on ice behind the passenger's seat and empty beer bottles throughout the car. He also believed that Ray looked under 21 years of age. When Ray told Trooper Heckman that he was only 19 years old, the Trooper had reasonable suspicion that criminal activity was afoot. In other words, a reasonable person in the position of the officer could conclude that Ray was violating the law by engaging in under age drinking. Trooper Heckman's reason for ordering Ray to exit the vehicle was that he wanted to evaluate whether he could detect alcohol on Ray's breath. Under these circumstances it was clearly reasonable for Trooper Heckman to order Ray out of the vehicle.

The fact that Trooper Heckman admittedly did not think that Ray was armed and dangerous is of no consequence to our finding that the order to get out of the car was reasonable. The *Mimms* case makes it clear that the officer need not articulate any reason for ordering the driver from the vehicle when the vehicle is lawfully detained for a traffic violation. Indeed, the officer in *Mimms* could articulate no reason for ordering Mimms out of his vehicle. It was merely his practice to order the occupants out of the vehicle as a matter of course during a traffic stop. The suppression court's confusion results from a failure to differentiate between the order to exit the vehicle and the subsequent frisk of the defendant. After finding that the order to exit the vehicle was not so invasive as to

violate the Fourth Amendment, the Court in *Mimms* considered the subsequent search of the defendant and concluded once the officer observed the bulge under defendant's jacket he could "reasonably conclude that the defendant was armed and dangerous." Id. at 112. Based on this reasonable belief the officer was justified in conducting a *Terry* pat down for weapons. Instead of separating the two issues involved in *Mimms*, that is, the constitutionality of the order to exit the vehicle and the the constitutionality of the search following the order, the suppression court simply merged the two distinct findings into one holding. Hence, the suppression court read *Mimms* as holding that an officer may only order the occupants to exit the vehicle following a lawful stop when he reasonably believes that the occupants are armed and dangerous. A careful dissection of *Mimms* reveals that the trial court erred in reaching this conclusion. *Mimms* clearly holds that "officers may, consistent with the Fourth Amendment, exercise their discretion to require a driver who commits a traffic violation to exit the vehicle even though they lack any particularized reason for believing the driver possesses a weapon." *New York v. Class*, 475 U.S. 106, 115, 106 S.Ct. 960, 966, 89 L.Ed.2d 81 (1986); *Hardnett, supra* at 358. We need not go so far as to hold that an officer who has lawfully stopped a vehicle for a traffic violation may order a passenger out of the vehicle as a matter of course, in the absence of either a reasonable suspicion that the the occupant is involved in criminal activity or that he is armed and dangerous. While the rationale used in *Mimms* would seem to suggest this result, we simply hold today that where a police officer has lawfully stopped a vehicle for a traffic violation, he may order a passenger to alight from the vehicle when he has an articulable basis to believe that criminal activity is afoot without violating the Fourth Amendment.

 Having found that the officer's order to step out of the car was not violative of the Fourth Amendment, we now must consider whether the warrantless seizure of the

marijuana observed under the seat was permissible. As Ray stepped out of the vehicle, an open bottle of beer spilled out onto the ground. When Trooper Heckman bent down to pick up the bottle, he observed a clear plastic bag which appeared to contain marijuana underneath the passenger seat. We find that Trooper Heckman was justified in seizing the contraband under the "plain view" doctrine. As the court noted in *Commonwealth v. Chamberlain, supra*, 332 Pa.Superior Ct. at 116, 480 A.2d at 1214 (1984), the "plain view" doctrine should be looked at "not as an independent exception to the warrant" requirement, but "as an extension of whatever the prior justification for an officer's 'access to the object' may be." So long as the officer's "access to an object has some prior justification under the Fourth Amendment" and there is probable cause to associate the object with criminal activity, the officer may justifiably seize the observed object under the doctrine of "plain view". *Id.; Illinois v. Andreas*, 463 U.S. 765, 771, 103 S.Ct. 3319, 3321, 77 L.Ed.2d 1003 (1983). Because Trooper Heckman's access to the marijuana was the result of what we have determined to be a constitutionally permissible stop and order to step out of the vehicle, his seizure of the plastic bag, which he had probable cause to suspect was connected with criminal activity, was proper.

▇▇▇▇▇ Following the seizure of the bag of marijuana, Trooper Heckman ordered both Elliot and Ray back to the police cruiser where he patted down of each of them and confiscated various items. Among the items seized from Elliot's pants pockets were a hollow wooden "stash kit" containing marijuana and a plastic bag which also contained marijuana. In addition, Trooper Heckman discovered a folding knife concealed in Ray's back pocket. Trooper Heckman acknowledged that neither Elliot nor Ray were formally placed under arrest at the time of the pat down. However, we have found that the fact that a formal arrest has not been effectuated is not dispositive of the question of whether an arrest has occurred for purposes of the Fourth Amendment. Rather, an arrest may be accomplished by

any act "which indicates an intent to take an individual into custody and subject him to the control and will of the person making the arrest." *Commonwealth v. Casuccio,* 308 Pa.Super. 450, 461, 454 A.2d 621, 627 (1982). This question is to be evaluated in light of the "reasonable impression conveyed to the person subject to the seizure rather than in terms of the subjective view of the police officer." *Commonwealth v. Benson,* 280 Pa.Super. 20, 27, 421 A.2d 383, 386 (1980). Moreover, what starts out as a lawful investigatory detention may escalate to a full blown arrest which must be supported by probable cause. An officer may briefly detain a suspect and then proceed to conduct an actual search if the facts gleaned during that detention ripen into probable cause to arrest. *White, supra,* 358 Pa.Superior Ct. at 128, 516 A.2d at 1215, citing *Commonwealth v. Palm,* 315 Pa.Super. 377, 385, 462 A.2d 243, 248 (1983). Probable cause to arrest exists where the facts at the time of arrest would warrant a prudent person in believing that an offense had been committed, and that the suspect was the perpetrator of the offense. *Commonwealth v. Anderson,* 360 Pa.Super. 466, 470, 520 A.2d 1184, 1186 (1987).

We find that at the time Trooper Heckman conducted the pat down of defendants, he had probable cause to arrest them for possession of a controlled substance. Although the officer did not declare that he was formally placing the defendants under arrest, and regardless of the fact that he may have believed that he was conducting a *Terry* pat down, the objective circumstances at the time of the pat down lead to the inescapable conclusion that he had conveyed to the defendants that they were not free to leave. It is tenuous at best to argue that after observing a police officer discover and seize a bag of marijuana from the vehicle, and then being ordered back to the police cruiser to assume a frisk position, a reasonable person would conclude that the officer was not going to take him into custody. Trooper Heckman's order to the defendants to place their hands on the cruiser and spread their legs, after discovering

the marijuana beneath the seat, constituted an act which subjected the defendants to the control and will of the officer such that the detention at that point proceeded beyond a mere investigatory detention and constituted an arrest. *See Swanger, supra.* Because this arrest was based on probable cause, the items seized from the persons of the defendants were the fruits of a valid search incident to a lawful arrest and are properly admissible at trial.[6] *See Commonwealth v. Harris,* 429 Pa. 215, 239 A.2d 290 (1968).

**6.** We note that even assuming arguendo that Elliot and Ray were not under arrest at the time that the stash kit and the bag of marijuana were seized from Elliot's pockets, and the knife was seized from Ray, we would find the knife and the stash kit were nevertheless admissible as the fruits of a valid *Terry* pat down. Where there is no probable cause to arrest, the search of an individual must be based on a reasonable suspicion that the person is armed and dangerous. *Terry, supra* at 25–26, 88 S.Ct. at 1882. However, where the officer does possess probable cause to arrest an individual, but simply chooses not to do so, "the officer may still conduct a protective pat down for weapons." *Commonwealth v. Rehmeyer,* 349 Pa.Super. 176, 188, 502 A.2d 1332, 1335 (1985). The scope of such a pat down must be strictly limited "to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." *Terry, supra* at 29, 88 S.Ct. at 1884; *In the Interest of William Dixon,* 356 Pa.Super. 105, 107, 514 A.2d 165, 167 (1986). While Trooper Heckman admitted that he did not believe that either defendant was armed and dangerous, he had probable cause to arrest them for possession of a controlled substance. Consequently, he was justified in conducting a pat down and seizing those items discovered during the course of the pat down which could reasonably be interpreted as a concealed weapon. Both the wooden stash kit taken from Elliot and the knife taken from Ray fall within this category and would thus be admissible at trial. While the bag of marijuana taken from Elliot's pocket could not reasonably be mistaken for a weapon, and thus would be inadmissible fruit of an unconstitutional intrusion under a *Terry* analysis, this illegality would not necessitate the exclusion of any of the evidence subsequently seized from the car which was purged of the primary taint. *See Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Commonwealth v. Meadows,* 222 Pa.Super. 202, 293 A.2d 365 (1972). The discussion that follows leaves no doubt that the evidence obtained from the search of the vehicle was not "come at" by exploitation of the bag of marijuana found in Elliot's pocket, but by "means sufficiently distinguishable" to be purged from Trooper Heckman's search which exceeded the bounds of *Terry. Wong Sun, supra* at 488, 83 S.Ct. at 417. Consequently, we would not find the drugs, paraphernalia and money discovered in the vehicle to be excludable under the "fruit of the poisonous tree" doctrine even if we were to find that the defendants were not under arrest at the time of the pat down.

Following his search of the defendants, Trooper Heckman read them their *Miranda* rights and then proceeded to radio Trooper Good for assistance. While waiting for Trooper Good to arrive, the defendants admitted to Trooper Heckman that more drugs were concealed in the vehicle. Upon Trooper Good's arrival, he requested Elliot, the owner of the vehicle, to consent to a search. He also again informed Elliot of his *Miranda* rights. Although hesitant at first, Elliot signed a written consent form when Trooper Good indicated that they had sufficient grounds to obtain a warrant to search the vehicle. The ensuing search yielded bags containing hashish, hallucinogenic mushrooms, LSD, $1100 in cash, and other drug paraphernalia. The Commonwealth contends that these items were seized pursuant to a valid consent search. We agree.

The question of whether an arrested individual has voluntarily consented to a search "is one of fact which must be determined in each case from the totality of the circumstances." *Commonwealth v. Walsh,* 314 Pa.Super. 65, 74, 460 A.2d 767, 771 (1983); *See also Commonwealth v. Mancini,* 340 Pa.Super. 592, 603, 490 A.2d 1377, 1383 (1985) (listing factors which weigh in favor of and against a finding of voluntariness). So long as the consent is voluntarily given and the person consenting has authority to consent, a warrantless search is proper. *See Commonwealth v. Latshaw,* 481 Pa. 298, 392 A.2d 1301 (1978).

We find that the circumstances surrounding Elliot's consent to the search of his vehicle indicate that his consent was voluntarily given. In *Commonwealth v. Chiesa,* 329 Pa.Super. 401, 478 A.2d 850 (1984), we concluded that the warrantless searches of the defendant's vehicle and basement were proper because he had voluntarily consented to the search. We based our finding of voluntariness primarily on the fact that the defendant had been thoroughly informed of his *Miranda* rights and had signed a written consent form prior to the search. We also rejected the defendant's argument that his consent was involuntary because the officer told him that he would obtain a warrant

if the defendant refused to comply, and because of the incriminating evidence had already been found in "plain view". *Id.* Likewise, in the present case we find the fact that Elliot may have felt that it would have been useless to refuse to consent in light of the incriminating evidence which had already been discovered, and the fact that Trooper Good stated that he had sufficient information to obtain a search warrant, does not compel a conclusion that Elliot's consent was involuntary. Both Elliot and Ray had informed Trooper Heckman that additional drugs were present in the vehicle after they had been given their *Miranda* warnings. Prior to Elliot's signing of the consent form both defendants were again fully informed of their constitutional rights and indicated that they understood those rights. Moreover, Elliot read and signed a written consent form prior to the search. These facts clearly support a finding that Elliot's consent was voluntarily obtained and not the result of the coercive efforts of the officers.[7]

Accordingly, we find that the officer's order to the passenger to exit the vehicle following a lawful traffic stop did not constitute an unreasonable seizure of the person under the Fourth Amendment. As a result, we believe that the suppression court's decision to exclude all evidence subsequently seized under the "fruit of the poisonous tree" doctrine was erroneous. Accordingly, we reverse the court's suppression order.

Order reversed.

JOHNSON, J., files a dissenting opinion.

JOHNSON, Judge, dissenting:

I am obliged to dissent. Appellees in their brief contend that the stopping of the motor vehicle was unlawful. I

---

7. We also note that after lawfully observing the marijuana underneath Ray's seat, Trooper Heckman would have been justified in searching the entire passenger compartment of the vehicle without Elliot's consent. *See New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).

agree. I would affirm the orders of the suppression court on a different rationale. An appellate court may affirm a trial court where it is correct on any ground. *Gerace v. Holmes Protection of Philadelphia*, 357 Pa.Super. 467, 516 A.2d 354 (1986), *appeal denied*, 515 Pa. 580, 527 A.2d 541 (1987). The task of this Court in reviewing the decision in a suppression hearing is to determine whether the factual findings of the suppression court are supported by the record, for the law is clear that we are bound by such factual findings of the suppression court as are supported by the record. *Commonwealth v. Gilbert*, 364 Pa.Super. 354, 357, 528 A.2d 195, 196 (1987) (citations omitted). In determining whether the findings of fact are supported by the record, we are to consider only the evidence of the appellees and so much of the evidence of the appellant which, as read in the context of the record as a whole, remains uncontradicted. *Commonwealth v. White*, 358 Pa. Super. 120, 125, 516 A.2d 1211, 1212 (1986). We are not bound by findings wholly lacking in evidence nor the suppression court's conclusions of law. *Id.*

The Motor Vehicle Code provides that a police officer must have "articulable and reasonable" grounds or probable cause to suspect a violation of the code in order to stop a vehicle. 75 Pa.C.S. § 6308(b). At the suppression hearing, Trooper Heckman was unable to name the section of the Motor Vehicle Code of which he suspected appellee Elliott to be in violation. N.T. 10/7/86 at 28. Elliott was ultimately charged with violation of Section 4524(a), which applies to obstructions on the front windshields of motor vehicles. Trooper Heckman concedes this citation to be clearly inapplicable. N.T. 10/7/86 at 29. The officer's statement that he believed that the air freshener[1] hanging from the rearview mirror might materially obstruct, obscure or impair the driver's vision or otherwise constitute a safety hazard does not satisfy the requirement that this belief be reasonable. N.T. 10/7/86 at 20–21.

1. The air freshener is described as a circular yellow bird with dimensions of either two inches by one inch or two and one-half inches by one and one-half inches.

A trial court may not simply accept the officer's bald assertion and then conclude that a reasonable basis for the stop existed. All the circumstances must be examined. *Commonwealth v. Edwards*, 355 Pa.Super. 311, 513 A.2d 445, (1986). A *reasonable* suspicion of unlawful activity requires the officer to rely on specific and articulable facts which together with the rational inferences from those facts, reasonably warranted the intrusion. *Id.* Trooper Heckman's testimony shows that he stopped the motor vehicle solely because there was an object affixed to the rearview mirror. The Motor Vehicle Code nowhere justifies police officers in stopping every vehicle that has any object affixed to the rearview mirror. Trooper Heckman testified that he believed appellee's vehicle was in violation of either Section 4523(c) or Section 4524(c) of the Motor Vehicle Code. N.T. 10/7/86 at 18. Section 4523 of the Motor Vehicle Code is titled "Exhaust systems, mufflers and noise control". 75 Pa.C.S. § 4523. Section 4524(c) of the Motor Vehicle Code provides as follows:

**(c) Other obstruction.**—No person shall drive a motor vehicle with any object or other material hung from the inside rearview mirror or otherwise hung, placed or attached in such a position as to *materially* obstruct, obscure or impair the driver's vision through the front windshield or any manner as to constitute a safety hazard. (Emphasis added).

75 Pa.C.S. § 4524(c).

It is evident that the air freshener could not constitute a violation of Section 4524 of the Motor Vehicle Code. Therefore the intrusion of an investigatory stop was not reasonably warranted. In *Commonwealth v. Burrell*, 286 Pa.Super. 502, 429 A.2d 434 (1981), the police stopped defendant's automobile on an allegation that the tail light was defective. This Court stated that, although the police may stop an automobile if they reasonably suspect a violation of the Motor Vehicle Code, "if the Cadillac's tail light was not defective, they had no reason to suspect such a violation."

*Id.,* 286 Pa.Super. at 506, 429 A.2d at 435. As we stated in *Edwards:*

> An individual has a reasonable expectation of privacy in an automobile and when a vehicle is stopped by a police officer, a seizure within the meaning of the Fourth Amendment has occurred.
>
> > [E]xcept in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, *or that either the vehicle or an occupant is otherwise subject to seizure for violation of law,* stopping an automobile and detaining the driver in order to check ... the automobile [is] unreasonable under the Fourth Amendment. (Emphasis added, citations omitted).

355 Pa.Super. at 314, 513 A.2d at 446.

I conclude that the seized physical evidence and all statements made by the appellees should be suppressed as the fruit of an illegal stop. Therefore, I would affirm the suppression orders entered by the trial court.

Accordingly, I dissent.