## Commonwealth v. Hoffman

*Albert Masland, assistant district attorney,* for the commonwealth.

*Donald Dorer,* for defendant.

HESS, *J.*, April 10, 1989 — A suppression hearing in the above matter was held on April 4, 1989. After careful consideration of the testimony and in accordance with Rule of Criminal Procedure 323(i), we make the following factual and legal findings.

During the evening hours of December 20, 1988, Patrolman Bergman, of the Carlisle Police Department, stopped a vehicle driven by a certain Mr. Hockensmith. There is no contention that the stop of the vehicle was in any way unlawful or constitutionally infirm. Following the administration of field sobriety tests, Mr. Hockensmith was arrested for driving under the influence and searched. The search revealed a quanity of marijuana. At or around that time the arresting officer, Patrolman Bergman, also noticed a quanity of surgical clips, roach clips when used in the context of smoking marijuana, on the console of the vehicle.

In the meantime, the car's passenger, defendant Carl Edward Hoffman, exited the vehicle and approached Patrolman Bergman who was busy with Mr. Hockensmith. On two occassions he was ordered to take his seat in the vehicle. On the third occasion, Mr. Hoffman again approached Officer Bergman and asked whether he could leave the scene. At that time, Patrolman Bergman, concerned about Mr. Hoffman's actions, called for the assistance of another police officer.

In response to the call, Patrolman Fones arrived on the scene. Officer Fones was made aware of the nature of Mr. Hoffman's conduct as well as the fact that marijuana was found on the person of Mr. Hockensmith and that there were roach clips in the car. Approaching Mr. Hoffman, Mr. Fones asked him to empty his pockets. In response to this request, the defendant, Hoffman, produced a pocketknife. Officer Fones then turned him around and placed him spread-eagle and proceeded to empty defendant's pockets in areas where Officer Fones had previously noticed bulges in defendant's clothing. Prior to this search of the defendant's person, Officer Fones conducted no pat-down, observed nothing, save the pocketknife, which appeared to him to be a weapon and (according to his own and candid testimony) had no reason to believe that defendant was armed and dangerous.

Given the minimal nature of the intrusion into Mr. Hoffman's privacy and the fact that Officer Fones displayed as understandable concern for his own person, we have carefully searched the law for any theory under which the commonwealth could uphold the search of defendant. We find none.

Mr. Hoffman was not being arrested. Accordingly, the search was not incidental thereto. Assuming that Mr. Hoffman was somehow connected

to the roach clips on the console of the vehicle and therefore assuming a reasonable suspicion of criminal activity, there was nothing to suggest that Mr. Hoffman was either armed or dangerous such as would allow the investigative searches permitted in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 89 (1968). Moreover, the search permitted in *Terry, supra,* is a pat-down for the purpose of ascertaining the presence of a weapon. In this case, not only does the commonwealth not argue that the bulge in Mr. Hoffman's pocket had the appearance of a weapon, but they agree that there was also no pat-down prior to the search.

The case is readily distinguishable from *Commonwealth v. Elliott,* 376 Pa. Super. 536, 546 A.2d 654 (1988), which the commonwealth cites in support of the validity of the seizure sub judice. In the *Elliott* case, a Pennsylvania State policeman stopped a vehicle operated by Elliott and occupied by one Troy Alancy Ray. Having thus brought the vehicle to a halt, Tropper Heckman observed a bag of ice with beer in it located behind the passenger seat where Ray was sitting. He also noticed a strong odor of alcohol emanating from the vehicle and several empty beer bottles strewn about the interior of the car. While Ray had no identification, he informed the officer that he was 19 years old. Ray was then asked to step outside the vehicle.

"As Ray proceeded to open the door and exit the vehicle, an open bottle of beer, which was apparently wedged between the door and Ray's leg, spilled out onto the road. As Trooper Heckman bent down to pick up the fallen bottle, he observed a clear plastic baggie containing what appeared to be marijuana protruding from under the passenger's seat. He seized the bag, and after confirming his suspicion that the bag contained marijuana, he attempted

to ascertain whether he could detect alcohol on Ray's breath. Detecting the odor of beer on Ray's breath, Trooper Heckman ordered both Ray and Elliott to go and place their hands on the police cruiser. He patted down Ray and found a folding knife in Ray's back pocket. Trooper Heckman's pat down of Elliott uncovered a stash kit in Elliott's right front pocket and a bag of marijuana in his left front pocket." *Commonwealth v. Elliott, supra,* at 541, 546 A.2d at 656. (footnote omitted)

In *Elliott,* the Superior Court held that a police officer may order a passenger to alight from a vehicle, without violating the Fourth Amendment, when the officer has articulable basis to believe that criminal activity is afoot. That being the case, the trooper was justified in retrieving the open beer bottle, which had fallen from the car, and was also justified in seizing marijuana which he observed in plain view underneath the passenger's seat. Thereafter, the case resorts to well-established principles that the search of Elliott and the automobile were incident to the defendant's lawful arrest. Of interest is the discussion of the court in a footnote:

"We note that even assuming arguendo that Elliott and Ray were not under arrest at the time that the stash kit and the bag of marijuana were seized from Elliott's pockets, and the knife was seized from Ray, we would find the knife and the stash kit were nevertheless admissible as the fruits of a valid *Terry* pat-down. Where there is no probable cause to arrest, the search of an individual must be based on a reasonable suspicion that the person is armed and dangerous. *Terry, supra* at 25-6, 88 S.Ct. at 1882. . . . Consequently, he was justified in conducting a pat-down and seizing those items discovered during the course of the pat-down which could reasonably be interpreted as

a concealed weapon. Both the wooden stash kit taken from Elliott and the knife taken from Ray fall within the category and would thus be admissible at trial. *While the bag of marijuana taken from Elliott's pocket could not reasonably be mistaken for a weapon, and thus would be inadmissible fruit of an unconstitutional intrusion under a* Terry *analysis . . . "* Elliott at 552, 546 A.2d at 662. (emphasis supplied)

The question, in this case, is whether there is authority to search the person of third parties at the scene of the arrest of another for a misdemeanor, where the third party expresses either curiosity or a desire to be permitted to leave the scene. We know of no such permission to search, particulàry where the underlying misdemeanor does not have, as a material element, any violent or assaultive characteristic. In short, the fact that Mr. Hoffman exited the vehicle which had been driven by Mr. Hockensmith and, on the final occasion of his having done so, asked whether it was necessary that he remain at the scene provides neither probable cause for arrest nor for concern for the safety of the officer which would jusify anything beyond a pat-down search. It is not materially different from searching the occupants of a vehicle driven by a drunk driver merely because they are occupants of the vehicle; a search for which there is, clearly, no authority under the law.

## ORDER

And now, April 10, 1989, defendant's omnibus pretrial motion in the nature of a motion to suppress evidence is granted.