COMMONWEALTH of Pennsylvania,

v.

**Efraim FONTANEZ, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Jan. 31, 1994.

Decided July 15, 1996.

---

1362

David M. McGlaughlin, for Appellant.

George S. Leone, for Appellee.

Before DOYLE and PELLEGRINI, JJ., and NARICK, Senior Judge.

DOYLE, Judge.

Efraim Fontanez appeals from an order of the Court of Common Pleas of Philadelphia County which denied his petition for the return of $2,650 in U.S. currency (the Currency) and granted the Commonwealth's petition for forfeiture of the Currency as contraband pursuant to Sections 6801–6802 of the Judicial Code (hereinafter the Forfeiture Act).[1]

The relevant facts as found by the court of common pleas are as follows. On January 10, 1989, at approximately 8:30 p.m., Philadelphia Police Officer George Kieffer and his partner observed Fontanez driving a 1984 Ford van north on 5th Street in the city. Officer Kieffer testified that he stopped the van on the 2900 block of North 5th Street after Fontanez disregarded a traffic signal. When Fontanez subsequently exited his vehicle,[2] after being asked for his driver's license and registration, Officer Kieffer noticed "[o]n the floor beside the seat was a paper bag, open. There was money, cash, United States currency, bills, laying all over the floor and in the bag." (Notes of Testimony (N.T.) at 7;

Reproduced Record (R.R.) at 31.) When Officer Kieffer inquired about the money, Fontanez refused to respond.

The area in which Fontanez was stopped is notorious as a major center for drug activity in Philadelphia. Officer Kieffer also stated that he was familiar with Fontanez, as well as his father, grandfather and step-mother, through their involvement in narcotic related activities. Based on these facts, and after issuing Fontanez a traffic citation, Officer Kieffer took Fontanez and the Currency[3] into custody. At police headquarters, the Currency was secretly placed in a desk drawer in a large room with several desks, where it was detected by a police dog which was specially trained to locate certain types of narcotics, including cocaine, by their scent.[4]

On March 14, 1989, approximately two months after the above-mentioned incident, Fontanez was again stopped by police in the same general area of North Philadelphia. Fontanez was observed by Officer Thomas Hollman cutting in front of two other vehicles.[5] In the process of attempting to decipher the vehicle identification number of Fontanez's vehicle, located on the front inside windshield, Officer Hollman saw a large paper bag filled with cocaine. In addition, $4,725.00 in United States currency was found in the vehicle. Although this second encounter with police is not directly at issue in the present case, testimony relating to the March incident was offered by the Commonwealth in the forfeiture hearing to establish that Fontanez was in fact involved in drug activity.

Fontanez was never convicted of any criminal offense for his alleged drug activity stem-

1. 42 Pa.C.S. §§ 6801–6802.

2. According to Officer Kieffer, he did not ask Fontanez to get out of the van, but Fontanez did so anyway, on his own initiative, after being asked for his license and registration.

3. The money, totalling $2,650.00, consisted of three $100.00 bills, five $50.00 bills, and one hundred and five $20.00 bills.

4. Officer Stanley Hamler, assigned to the K–9 unit, testified that neither he nor his dog, named

"Rocky," were present when the money was hidden. Nonetheless, Rocky was able to locate the Currency by detecting trace amounts of narcotics which were present on the fibers of the Currency and which indicated that it had been exposed to illegal drugs within a relatively short period of time beforehand.

5. In addition, Officer Hollman subsequently learned that Fontanez did not have a valid driver's license.

ming from either the January or March 1989 arrests and all charges against him were ultimately dismissed.[6] On January 27, 1989, Fontanez filed a motion for the return of the Currency with the court of common pleas, to compel the Commonwealth to return the Currency seized by police on January 10, 1989, pursuant to Pa. R.Crim. P. 324, which provides:

> (a) A person aggrieved by a search and seizure, whether or not executed pursuant to a warrant, may move for the return of the property on the ground that he is entitled to lawful possession thereof. Such motion shall be filed in the Court of Common Pleas for the judicial district in which the property was seized.

> (b) The judge hearing such motion shall receive evidence on any issue of fact necessary to the decision thereon. If the motion is granted, the property shall be restored unless the court determines that such property is contraband, in which case the court may order the property to be forfeited.

> . . . .

A hearing was subsequently held on August 13, 1991. At that time, Fontanez made a

motion to suppress evidence, alleging that the police lacked probable cause to seize the Currency. The court of common pleas denied that motion. Turning its attention to the merits, the trial court heard testimony presented by the Commonwealth establishing the above-mentioned facts. Fontanez, invoking his right against self-incrimination under the 5th Amendment of the United States Constitution, did not testify and presented no other evidence. Based on the Commonwealth's unrebutted evidence, the trial court determined that "the Commonwealth proved by a preponderance of the evidence that the funds in question were unlawfully possessed." (Trial Court opinion at 6.) Accordingly, by an order dated August 13, 1991, the trial court denied Fontanez's motion to have the Currency returned, but granted the Commonwealth's oral motion to have the Currency forfeited under the Forfeiture Act.[7]

Fontanez filed an appeal from the trial court's decision with the Superior Court on September 12, 1991.[8] By an order dated September 28, 1992, the Superior Court, pursuant to Pa. R.A.P. 751 (Transfer of Erroneously Filed Cases), transferred Fontanez's appeal to our Court based on its determina-

---

**6.** We are not certain exactly why the charges against Fontanez were dismissed because the procedural history of the criminal cases against Fontanez is not clear from the record; nonetheless, it is quite apparent that Fontanez has never been convicted of any crime, other than a summary traffic offense, in connection with the two arrests.

**7.** The following colloquy took place at the end of the hearing on August 13, 1991:

> Mr. Mc Glaughlin [counsel for Fontanez] . . .
> Now secondly, your Honor, he—the fact that he was arrested subsequent to that, is irrelevant. He wasn't convicted of anything.
> The Court: Conviction means nothing here. First of all, it is a different burden of proof, and secondly he was discharged at a preliminary hearing. And my experience has been that at a preliminary hearing, sometimes the officers don't show up and they are discharged for a number of reasons.
> Mr. Mc Glaughlin: What that means, your Honor, with all due respect, is that he has no prior convictions for drug dealing. So you can't label him with drug dealer.

> The Court: I am aware of that.
> Mr. Mc Glaughlin: The third thing, your Honor, is that a drug dog alerting on money, I bet you that if they brought that dog in here right now, that dog would alert on the money in my pocket.
> The Court: I agree with you. But I will tell you this, a guy who comes in here and I am convinced he is a drug dealer, you can ask the Superior Court to return it, I am not going to return the money.
> I will deny your petition to return the money and I will grant the petition for forfeiture. You have 30 days in which to file an appeal.
> Mr. Mc Glaughlin: Your honor, I have seen no petition to forfeit, yet.
> The Court: Well then, make an oral motion.
> Ms. Mc Cartney: Your Honor the Commonwealth petitions to forfeit this money.
> The Court: I will grant the Commonwealth's motion for forfeiture.
> (N.T. at 41–42; R.R. at 65–66.)

**8.** Prior to filing his appeal, the trial court denied a motion for reconsideration filed by Fontanez.

tion that it lacked subject matter jurisdiction.[9]

On appeal, Fontanez initially raises the same argument that was previously rejected by the Superior Court, *i.e.*, the Superior Court, and not this Court, has jurisdiction in this matter since it involves a petition for the return of property filed under the Rules of Criminal Procedure. In addition, Fontanez argues the following: (1) the trial court erred in denying his petition since the Currency was seized as the result of an illegal arrest and without probable cause; and (2) the trial court erred in granting the Commonwealth's oral motion for forfeiture since the Commonwealth failed to comply with the requirements of Section 6801(c) of the Forfeiture Act; (3) the Commonwealth did not provide Fontanez with sufficient notice of the basis of its claim to the Currency; and (4) the evidence presented by the Commonwealth was insufficient to establish the required nexus between the Currency and illegal drug activity on the part of Fontanez.

## I. Jurisdiction of Commonwealth Court

■ Fontanez's first argument is that this Court lacks jurisdiction to hear this case, and that the case should be transferred back to the Superior Court, since the case was commenced through a motion for the return of property pursuant to Pa. R.Crim. P. 324. Although Fontanez concedes that this Court would have jurisdiction over a civil forfeiture action initiated by the Commonwealth under the Forfeiture Act, he maintains that the present action should be treated differently, because its genesis was through the Rules of *Criminal* Procedure and, therefore, is not truly a civil action falling within the jurisdiction of this Court.

We disagree. In *One 1988 Toyota Corolla (Blue Two–Door Sedan)*, 675 A.2d 1290 (Pa.

Cmwlth.1996) (No. 2423 C.D.1992, filed April 30, 1996), we recently rejected a similar argument and held that this Court does have jurisdiction over forfeiture actions regardless of whether they originate under the Forfeiture Act or under Pa. R.Crim. P. 324. We stated that "the mere fact that the procedure which governs [a motion for the return of property] is described by a rule of criminal procedure does not determine jurisdiction and does not transform the essential character of the in rem action of a forfeiture into a criminal proceeding." *Id.* at 1294. We further noted that a motion to return property under Pa. R.Crim. P. 324 and a forfeiture proceeding under the Forfeiture Act are for all practical purposes identical, and that it would make little sense to distinguish between the two for jurisdictional purposes. *Id.* Since bifurcating appeals in forfeiture cases between the Superior Court and this Court would only serve to promote forum shopping while needlessly wasting the time and resources of both the courts and litigants, we concluded that this Court has the authority to hear appeals involving motions for the return of property pursuant to Pa. R.Crim. P. 324 in addition to our jurisdiction under the Forfeiture Act itself. *Id.* For the same reasons enunciated in *One 1988 Toyota Corolla*, we reject Fontanez's argument and find that jurisdiction in the present case properly lies with the Commonwealth Court.

## II. Petition for Return of Property

■ Turning to the merits, Fontanez's first argument is that the trial court erred in denying his petition for return of the property since the Currency was seized as the result of an illegal arrest and without probable cause.[10] Since we disagree with Fontanez's contention that the Currency was illegally seized, we must reject this argument.

9. The Superior Court's decision to transfer this case was made in response to a motion filed by the Commonwealth and over Fontanez's strenuous objection. Fontanez filed an immediate petition for allowance of appeal with the Supreme Court challenging the Superior Court's transfer of the case. However, the Supreme Court denied this request on June 24, 1993. *Common-*

*wealth v. Fontanez*, 535 Pa. 614, 629 A.2d 1376 (1993).

10. Our scope of review is limited to examining whether the findings of fact made by the trial court are supported by competent evidence, and whether the trial court abused its discretion or committed an error of law. *Commonwealth v. $8006.00 U.S. Currency*, 166 Pa.Cmwlth. 251, 646

The initial traffic stop by Officer Kieffer was lawful since Fontanez was observed driving through a red light. *See Commonwealth v. Woodard,* 307 Pa. Superior Ct. 293, 453 A.2d 358 (1982). Furthermore, when Fontanez subsequently opened the door of the van, the Currency was in "plain view." [11] It is well established that the police may seize contraband which is in "plain view," so long as the initial intrusion is lawful and there exists "probable cause to associate the object with criminal activity." *Commonwealth v. Elliott,* 376 Pa. Superior Ct. 536, 550, 546 A.2d 654, 661 (1988), *petitions for allowance of appeal denied,* 521 Pa. 617, 557 A.2d 721 (1989) and 521 Pa. 621, 557 A.2d 724 (1989); *see also Commonwealth v. One 1986 Ford Mustang,* 397 Pa. Superior Ct. 116, 579 A.2d 958 (1990).

■ In addition, regarding the need to find that there exists probable cause to associate the object with criminal activity, *Elliott,* Section 6801(b)(4) of the Forfeiture Act provides that property may be seized where:

there is probable cause to believe that the property has been used or is intended to be used in violation of The Controlled Substance, Drug, Device and Cosmetic Act [12] [the Drug Act].

42 Pa. C .S. § 6801(b)(4). To find "probable cause" in a given case, it is merely necessary that:

the facts available to the officer would 'warrant a man of reasonable caution in

the belief' that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A 'practical, non-technical' probability that incriminating evidence is involved is all that is required.

*Commonwealth v. Kendrick,* 340 Pa. Superior Ct. 563, 570–71, 490 A.2d 923, 927 (1985) (citations omitted). Based on the quantity of money seized, the time of night when the stop was made, and the neighborhood in which the stop occurred, the lack of any reasonable explanation for why Fontanez was carrying such a large quantity of money, and the fact that Fontanez and members of his family were known to the officer as being involved in illegal drug activity, we find that sufficient facts existed so as to warrant the trial court's conclusion that Officer Kieffer had probable cause to seize the Currency in the present case.[13] In view of this determination, as well as Fontanez's complete failure to present any evidence whatsoever which would prove his rightful claim to the Currency or rebut the Commonwealth's prima facie case in support of forfeiture, we cannot conclude that the trial court erred in denying Fontanez's motion for the return of the Currency.

### III. Com monwealth's Oral Motion for Forfeiture under the Forfeiture Act

Fontanez next argues that the trial court erred in granting the Commonwealth's oral

---

A.2d 621 (1994); *see also SAS, Inc. v. State Police Bureau of Liquor Control Enforcement,* 162 Pa. Cmwlth. 263, 638 A.2d 455, *petition for allowance of appeal denied,* 539 Pa. 660, 651 A.2d 545 (1994).

**11.** We note that Fontanez was not required to exit his vehicle, but did so voluntarily. *See supra* note 2. Moreover, even if Officer Kieffer had asked Fontanez to exit his vehicle, such a request after a valid traffic stop is constitutionally permissible. *See Commonwealth v. Brown,* 439 Pa. Superior Ct. 516, 654 A.2d 1096, *petition for allowance of appeal denied,* —— Pa. ——, 664 A.2d 972 (1995).

**12.** Act of April 14, 1972, P.L. 233, *as amended,* 35 P.S. § 780–101 to § 780–144.

**13.** Since the Currency was legally seized under the "plain view" doctrine after a valid traffic

stop, it is irrelevant whether Fontanez's subsequent arrest was legal. Therefore, it is unnecessary for this Court to address the legality of that arrest.

Also, Fontanez argues in his appeal to this Court that the seizure of the Currency was the result of a "pretextual arrest" and that the trial court should have, therefore, granted his motion to suppress. However, our exhaustive review of the record indicates that Fontanez failed to raise this specific allegation in his petition for return of property or at the forfeiture hearing itself. Accordingly, we find that this aspect of Fontanez's argument is waived. *See Commonwealth v. Williams,* 390 Pa. Superior Ct. 493, 568 A.2d 1281 (1990).

motion for forfeiture since (a) the Commonwealth failed to comply with the requirements of Section 6801(c) of the Forfeiture Act; (b) the Commonwealth did not provide sufficient notice of the basis of its claim for the property seized; and (c) the Commonwealth failed to present sufficient evidence to establish the required nexus between the Currency and illegal drug activity on the part of Fontanez.

■ Section 6801(c) of the Forfeiture Act provides that where "seizure without process occurs, as provided herein, proceedings for the issuance thereof shall be instituted forthwith." 42 Pa.C.S. § 6801(c). Fontanez argues that the delay between the seizure of the property and the Commonwealth's petition for forfeiture, a period of over two and one-half years, was unjustified. Fontanez maintains that under both the Forfeiture Act and fundamental principles of due process, the Commonwealth should not be permitted to retain the Currency.

However, the need for the Commonwealth to file a prompt petition for forfeiture was unnecessary in this case since Fontanez himself had already initiated a hearing in this matter by filing a petition for the return of property under Pa. R.Crim. P. 324, less than a month after the seizure of the Currency. At that point, there was no longer any need for the Commonwealth to expeditiously file a petition under the Forfeiture Act since the proceedings to determine the issue were already in motion. Furthermore, a forfeiture action will not be set aside due solely to the passage of time absent a showing of prejudice. *Commonwealth v. One 1976 Oldsmobile Cutlass Supreme,* 85 Pa.Cmwlth. 433, 482 A.2d 686 (1984). Since Fontanez has failed to establish that he was prejudiced in any way by the Commonwealth's delay in making its oral petition for forfeiture, we

would have to reject this argument in any case.[14]

■ We must similarly reject Fontanez's argument that he was not given sufficient notice of the basis of the Commonwealth's claim for the Currency. The petition for return of property which Fontanez himself filed demonstrates that he did have notice. Furthermore, having been given a full hearing on the merits, with notice of that hearing and an opportunity to be heard, Fontanez cannot now claim that he was not afforded proper notice. *Commonwealth v. One 1976 Ford Truck Van,* 492 Pa. 541, 424 A.2d 1323 (1981), *cert. denied,* 454 U.S. 819, 102 S.Ct. 99, 70 L.Ed.2d 89 (1981).

■ Fontanez's final argument is that the evidence presented by the Commonwealth was insufficient to establish the required nexus between the Currency and illegal drug activity on the part of Fontanez. Initially, Fontanez notes that he was never convicted of a drug offense, nor was he observed engaged in drug related activity on the date in question. He additionally claims that the evidence relating to the police dog's identification of the Currency, Fontanez's subsequent arrest while in possession of drugs, and Officer Kieffer's testimony concerning both Fontanez and his family's involvement in drug activities was irrelevant, unreliable, and highly prejudicial. Fontanez argues that the trial judge erred in relying on this evidence in reaching his decision.

■ In the present case, the Commonwealth had the burden of proving that the Currency had been "furnished or intended to be furnished by any person in exchange for a controlled substance in violation of the [Drug Act]," or that the Currency had been "used or intended to be used to facilitate any violation of the [Drug Act]." 42 Pa.C.S.

14. Fontanez also claims that the Commonwealth's motion for forfeiture was not proper because it was made orally in court, and not filed with the trial court in writing. However, Fontanez has not cited to any authority in support of this claim. Since we are not aware of any authority which would prohibit such a motion from being made orally in open court, we summarily dismiss this part of Fontanez's argument. We note that this argument is somewhat disingenuous since Fontanez's own motion to suppress in this case was also made orally in open court rather than being filed as part of a written document.

§ 6801(a)(6)(i)(A) and (B). As previously discussed, the burden of proof in a civil forfeiture proceeding is the "preponderance of the evidence" standard, and not the "beyond a reasonable doubt" standard. *See* Section 6802(j) of the Judicial Code, 42 Pa.C.S. § 6802(j); *One 1988 Toyota Corolla.* Therefore, the fact that Fontanez was never convicted of any criminal offense in this case does not negate the trial court's determination that the Currency was contraband and subject to forfeiture under the Forfeiture Act.

Also, while the evidence objected to by Fontanez may not have been sufficient to support a criminal conviction, we believe that when viewed in combination with the other evidence presented, it was sufficient to support the trial court's forfeiture decision. Concerning Fontanez's specific allegation that the police dog's detection of narcotics on the Currency is inherently unreliable and should not have been considered by the trial court, this Court has previously upheld the forfeiture of money in cases where such action was supported by the detection of drug residue by police dogs.[15] *See Commonwealth v. $1920.00 U.S. Currency,* 149 Pa. Cmwlth. 132, 612 A.2d 614 (1992).

As for Fontanez's contention that his subsequent drug arrest and the alleged involvement of his relatives in illegal drug trafficking are irrelevant, we reject that argument as well. The subsequent arrest, occurring under almost the exact circumstances as in the present case, is highly probative since it tends to show a common pattern of criminal activity. The fact that Fontanez's relatives are involved in illegal drug activities is also relevant for the purposes of this proceeding. In order to establish its prima facie case, the Commonwealth need not demonstrate that Fontanez was engaged in illegal activity, but only that the confiscated Currency had been "used or intended to be used to facilitate any violation of [the Drug Act]." Section 6801(a) of the Judicial Code, 42 Pa.C.S. 6801(a)(6)(i)(B); *see Commonwealth v. $16,208.38 U.S. Currency Seized From Holt,* 160 Pa.Cmwlth. 440, 635 A.2d 233 (1993), *petition for allowance of appeal denied,* 538 Pa. 634, 647 A.2d 509 (1994) (once Commonwealth establishes its prima facie case, claimant has the burden of proving that he is the lawful owner of the money and that he did *not* use the money for an illegal purpose). The fact that Fontanez's relatives were known to the police as being active in illegal drug activities, regardless of whether Fontanez himself was involved or even knew of these activities, made it more likely that the Currency found in Fontanez's vehicle was derived from illegal drug activities. Accordingly, the trial court properly considered this evidence in reaching its decision.[16]

For the reasons enumerated above, we affirm.

### ORDER

NOW, July 15, 1996, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is hereby affirmed.

---

**15.** While we recognize that police dogs are not infallible, the trial court's reliance on the detection of drugs on the Currency by the dog was particularly justified in this case, especially considering the other corroborating evidence presented.

**16.** Fontanez presented no evidence which would demonstrate his rightful ownership of the property or to otherwise rebut the Commonwealth's prima facie case establishing that the Currency was in fact contraband and subject to forfeiture. Fontanez argues that the trial court improperly used the fact that he did not testify as evidence against him. However, the trial court clearly stated that it was making no negative inferences from Fontanez's decision not to testify. At the same time, by not presenting any evidence on his own behalf, Fontanez was precluded from obtaining a favorable decision once the Commonwealth established its prima facie case.